

**ARDREDA JOHNSON**
7352 Stonehaven Place
Rancho Cucamonga, CA 91730
Phone: (909) 268-0506
Facsimile: (909) 899-3881
Email: ardreda@aol.com

PLAINTIFF IN PRO PER

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

ARDREDA JOHNSON

    Plaintiff,

v.

PENNYMAC LOAN SERVICES, LLC;
PENNYMAC MORTGAGE
OPPORTUNITY FUND INVESTORS,
LLC; AND DOES 1-10, INCLUSIVE

    Defendants.

CASE NO. ED CV17-02506 JGB (SHKx)

COMPLAINT FOR:

1. VIOLATION OF 15 U.S.C. §1692f(6)
2. VIOLATION OF CALIFORNIA
   HOMEOWNER'S BILL OF RIGHTS
   ("HBOR") CIVIL CODES
   §§2924(a)(6), 2924.17
3. VIOLATION OF CIVIL CODE
   §2934a(a)(1)(A)(C)
4. NEGLIGENT REPRESENTATION
5. CANCELLATION OF
   INSTRUMENTS
6. VIOLATION OF CALIFORNIA
   BUSINESS & PROFESSIONS
   CODE §17200, ET SEQ.

FEE PAID

COMES NOW, Plaintiff ARDREDA JOHNSON, ("Plaintiff" or "JOHNSON"), a

"consumer" as defined by the Fair Debt Collection Practices Act, hereinafter referred to

as FDCPA, *15 U.S.C. § 1692a(3)*, against Defendant PENNYMAC LOAN SERVICES,

LLC, hereinafter referred to as PLS in the capacity as the alleged mortgage servicer of the alleged debt and debt collector; and Defendant PENNYMAC MORTGAGE OPPORTUNITY FUND INVESTORS, LLC, hereinafter referred to as PENNYMAC, in the capacity as the alleged foreclosing trustee and debt collector as defined by the FDCPA, *15 U.S.C. §§1692f(6), 1692a(6)(F)iii)*, complains, pleads and alleges as follows:

## I.   STATEMENT OF JURISDICTION

This Court has original jurisdiction over the claims in this action based on *28 U.S.C. §§1331, 1332, 1343, 15 U.S.C. §§1692f(6), 1692 , et seq.* and *42 U.S.C. §1983* which confer original jurisdiction on federal district courts in suits to address the deprivation of rights secured by federal law.[1]

This Court has original jurisdiction over the claims in the action based on *28 U.S.C. §1332* which confers original jurisdiction on federal district courts in suits between diverse citizens that involve an amount in controversy in excess of $75,000.00.

This Court also has supplemental jurisdiction over the pendant state law claims because they form a party of the same case or controversy under Article III of the United States Constitution, pursuant to *28 U.S.C. §1367.*

The unlawful conduct, illegal practices, and acts complained of and alleged in this Complaint were all committed in the Central District of California and involved real

---

[1] The Ninth Circuit instructs that in actions brought under *28 U.S.C. § 2201*, district courts must first determine whether there is actual controversy within its jurisdiction by analyzing the factors enumerated in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942). The *Brillhart* factors require the Court to 1) avoid needless determination of state law issues; 2) discourage litigants from filing declaratory actions as a means of forum shopping; and 3) avoid duplicative litigation. *Brillhart*, 316 U.S. at 495; *see also Schafer v. Citimortgage* No. CV 11-0319, 2011 WL 2437267 (C.D. Cal. June 15, 2011). As held by the court in *Schafer*, this action does not involve a needless determination of state law issues, does not involve forum shopping, and is not duplicative litigation.

property located in the Central District of California.  Therefore, venue properly lies in this District, pursuant to *28 U.S.C. §1391(b)*.

## II.    SUBJECT REAL PROPERTY AT ISSUE

The Real Property (herein after referred to as "Property"), the subject of any and all claims of any of the Parties hereto, and which is the subject of instant action, and that of which Plaintiff prays for a Decree and/or Order thereto.  The "Subject Property" address and legal description is as follows: 7352 Stonehaven Place, Rancho Cucamonga, CA 91730.  More particularly, the legal description of this property is:

LOT(S) 17 OF TRACT NO. 14407, IN THE CITY OF RANCHO CUCAMONGA, COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 248 PAGE(S) 14 THROUGH 19 INCLUSIVE, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN BERNARDINO COUNTY ON MAY 26, 1992.

Assessor's Parcel Number:  0227-831-17-0-000.

## III.    IDENTITY OF PARTIES

Plaintiff is informed and believes, and thereon alleges, that at all times relevant hereto Defendant, PENNYMAC LOAN SERVICES, LLC ("PLS"), is a registered mortgage institution licensed to do business in the State of California, in and of the County and City where subject "PROPERTY" is so situated and physically located which is within this Courts Judicial District.  PLS is in the primary business of servicing residential mortgage loans, collecting debt on behalf of other entities and enforcing

security interests.

Plaintiff is informed and believes, and thereon alleges, that at all times relevant hereto Defendant, PENNYMAC MORTGAGE OPPORTUNITY FUND, LLC. ("PENNYMAC"), is an unknown and unregistered business operating in the state of California. PENNYMAC is in the primary business of enforcing security interest in real property.

Plaintiff is unaware of the true names and capacities of any individuals and/or entities sued herein under the fictitious names DOES 1 to 10, inclusive or, to the extent that the names of such individuals or entities may become known to Plaintiff, and as such Plaintiff cannot state with any certainty that such a Cause of Action lies herein as against such individuals or entities, or Plaintiff is unable to alleged the elements of such Cause of Action, at this time, and as such said Defendants are herein named in accordance with the provisions of (*Cal Code of Civil Procedure Sec. 474*). Plaintiff thereon reserves the right to amend instant Complaint to allege the true names and capacities of such fictitiously named Defendants when the same become known or when it has been ascertained with reasonable certainty that such Cause of Action hereunder can be satisfactorily stated and maintained as against each such fictitiously named individual or entity.

Plaintiff is informed and believes and thereon alleges, that in committing certain acts alleged, some or all of the Defendants named were acting as the Agents, Joint Ventures, Partners, Representatives, Subsidiaries, Affiliates, Associates, Successors, Assigns and/or Employees and/or Agents or some or all of the other Defendants, and that

COMPLAINT

some or all of the conduct of such Defendants, as complained of herein, was within the course and scope and agency of such relationship.

Wherever reference is made in this Complaint to any act of any Defendants, that allegation shall mean that each Defendant acted individually and jointly with the other Defendants.

Any allegation about acts of any corporate or other business Defendants means that the corporation or other business did the acts alleged through its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

At all relevant times, each Defendant committed the acts, caused or directed to others to commit the acts, or permitted others to commit the acts alleged in this Complaint. Additionally, some or all of the Defendants acted as the agent of the other Defendants, and all of the Defendants acted within the scope of their agency if acting as an agent of the other.

At all relevant times, Defendant knew or realized that the other Defendants (successors and/or assigns) were engaging in or planned to engage in the violations of law alleged in this Complaint. Knowing or realizing that the other Defendants were engaging in or planning to engage in unlawful conduct, each Defendants nevertheless facilitated the commission of those unlawful acts, and thereby aided and abetted the other Defendants in the unlawful conduct.

At all times mentioned in this Complaint, Plaintiff, ARDREDA JOHNSON, is an

individual consumer residing in the County of San Bernardino and is the owner of the certain Subject Property.

This is a federal judicial issue and the Consumer is authorized by the Constitution for the United States of America, codified in the FDCPA, to enforce the laws of the United States and to protect and defend those inalienable secured rights within the Constitution for the United States of America. This is an action to enforce the liability of the Debt Collectors/Defendants for violations of this Consumer's protections under the FDCPA, the Constitution for the United States of America, and other consumer protection laws which were enacted by Congress to protect Consumers from illegal, harassing, deceptive and abusive debt collection activities.

The rules of law governing this Complaint is the FDCPA, *15 U.S.C. §1692f(6)*, the Consumer Financial Protection Bureau (CFPB), the Federal Trade Commission (FTC) and Article III, Section 2 of the United States Constitution. The language to be used in this matter is the Plaint Writing Act of 2010 – which has been enacted by Congress through Executive Order 13563. It requires federal agencies to use clear communications that the public can easily understand and written in plain language.

Any motions or pleadings, that contain legalese and are not written in plain English for the Consumer to understand, will be intentionally confusing, abusive, profane, obscene and harassing to the Consumer, would be a violation of *15 U.S.C. §1692d(2)*, and will be assessed at an additional $5,000.00 per occurrence and added to this Consumer's verified claim.

COMPLAINT

Any response, communications or counterclaim to this Consumer's Complaint verified claim, from any Debt Collector/Defendant in the form of pleadings or otherwise, should be verified, under oath and penalty of perjury, as required by law. There will be no exceptions. Any false statements made in any communications by the Defendants in this enforcement action, would be considered perjury. Each occurrence of perjury will be assessed at $25,000.00 and will be added to the Consumers' damages.

Any debt collector or attorney attempting to come into this consumer matter, MUST have prior consent from the Consumer or a court of competent jurisdiction to enter their appearance and MUST have the proper license; and MUST be properly bonded and insured in an amount to cover all of the Consumers' damages in this action.

## IV.  DATE OF DETERMINATION

Plaintiff herein request that the date of the Judicial determination sought be that of the date of the filing of the Complaint.

## V. STATEMENT OF THE CASE

This action arrives out of the illegal conduct and behavior of debt collectors, Defendants, PLS and PENNYMAC, engaging in illegal collection activities as defined in *15 U.S.C. §1692f(6)*. Defendants, due to the failure of the alleged debt being paid, created and filed various foreclosure documents in an attempt to proceed with a non-judicial foreclosure action to dispossess and disable Plaintiff from her personal, private property that was obtained for personal, family and household use – not for commercial business or trade. Plaintiff alleges Defendants have no lawful or legal right to do so.

7

COMPLAINT

Plaintiff, a "consumer", disputes the unverified alleged debt with Defendants and have requested verification and validation of the alleged debt.  Thus, Plaintiff contends Defendants do not have a lawful right to contact her, attempt to collect on the alleged debt, and proceed with enforcement of a security interest by attempting to conduct a non-judicial foreclosure action against her Property.

## VI.   CALIFORNIA HBOR REFLECTS A LEGISLATIVE INTENT TO PROTECT HOMEOWNERS AGAINST ABUSIVE PRACTICES INCLUDING FOECLOSURES BY THE WRONG PARTY

California Homeowner's Bill of Rights ("HBOR") was California's attempt to address a range of misconduct in the mortgage industry.  HBOR imposed numerous protections for the homeowner which included:  (1) a restriction on "dual-track" foreclosure, which prohibits mortgage servicers from advancing the foreclosure process when a loan modification is underway *(§ 2923.6)*; (2) a requirement that lending institutions provide a single point of contact for the homeowner *(§ 2923.7)*; (3) a requirement that loan servicers have reviewed "competent and reliable evidence" of default prior to initiating foreclosure, i.e., an anti-robosigning protection *(§ 2924.17)*; and (4) a private right of action for plaintiffs seeking to enforce certain protections within the act *(§2924.12)*.  These pre-emptive measures are properly alleged in Plaintiff's Complaint.

Consistent with the public policy in favor of preserving homeownership, a plaintiff can properly bring an action based on the allegation that the foreclosing party does not own the debt, i.e., the mortgage or the beneficial interest in the deed of trust.  Contrary to

Defendants' view, a plaintiff, even one in default, suffers real harm when a party without the right to do so seeks to foreclose on his or her home. Accordingly, a homeowner may bring an action on that basis that the wrong party is seeking to foreclose, whether due to an invalid assignment of debt or for any other reason. This is the issue in the case at bar.

This basic principle – **that only a true debt owner or its agent has lawful authority to foreclose has been long recognized in California law**. *Santens v. Los Angeles Co.* (1949) 91 Cal.App.2d 197, 202 ["the trust deed is a mere incident of the debt and could only be foreclosed by the owner of the note;"]; *Dimrock v. Emerald Properties LLC* (2000) 81 Cal.App.4th 868, 875 [interpreting non-judicial foreclosure statutes to codify existing law prior to 1935, which permits only the recorded trustee to foreclose at a given time]. This flows from the concept that the debt (i.e. promissory note) and the security interest (i.e. a deed of trust) are interconnected instruments that function and move together. (*California Civil Code § 2936* ["t]he assignment of a debt secured by a mortgage carries with it the security"].)

Because the Deed of Trust secures the debt, only the debt owner (or the debt owner's agent) can enforce it. Thus, a non-debt-owner acts "wrongfully" when it forecloses or attempts to foreclose on a Deed of Trust to which it is not the beneficiary, and a plaintiff can bring a wrongful foreclosure action challenging that conduct. *Barrionuevo, supra*, 998 F. Supp.2d at p. 972 [plaintiff may "properly allege that only the 'true owner' or 'beneficial holder' of a Deed of Trust can bring to completion a non-judicial foreclosure under California law"].)

## VII.   **FACTUAL ALLEGATIONS**

On November 7, 2006, Plaintiff executed a Deed of Trust in favor of First NLC Financial Services, LLC, hereinafter referred to as First NLC.  First NLC is a "creditor" as defined by the FDCPA, *15 U.S.C. §1692a(4).*  The transaction as defined by the FDCPA, *15 U.S.C. §1692a(5)* is a "debt" and hereinafter referred to as a "debt" or "debt obligation".  Attached as **Exhibit "A"** and incorporated herein by reference is a true and correct copy of the Deed of Trust, hereinafter referred to as DOT.  Attached as **Exhibit "B"** and incorporated herein by reference is a true and correct copy of the Adjustable Rate Note, hereinafter referred to as Note.  The copy of the Note was provided by Defendant PLS and has no endorsements that evidences who PLS states is the current owner of the debt.  The DOT and Note have a loan number that is different from what Defendant PLS references.   There is no endorsement that evidences PENNYMAC is the owner of the debt.

Sometime after the closing of the loan, Plaintiff alleges that the debt was purportedly assigned, transferred, and/or sold to the CitiGroup Mortgage Loan Trust 2006-AR9, hereinafter referred to as CitiGroup 2006-AR9 Trust in which U.S. Bank National Association is the Trustee.  Based on information and belief, this transaction had to occur on or before November 30, 2006, the Trust's Closing Date.  Based on information and belief, the alleged debt has been paid off.  Attached as **Exhibit "C"** and incorporated herein by reference are Bloomberg Screenshots of the alleged debt along with a notarized Affidavit of Facts from a certified Bloomberg Specialist.

In 2011, Plaintiff experienced a financial hardship that caused her to fall behind in her payments. Her financial hardship grew deeper and she was unable to get caught up with her payments and the debt subsequently fell into default. To date the alleged debt is contractually due for the February 1, 2011 payment. For nearly seven years, Plaintiff has been given the run around in her attempts to modify the loan and her inquisition about the true ownership of the alleged debt.

On or about September 8, 2011, Plaintiff received from Defendant PLS a letter entitled "Notification of Assignment, Sale or Transfer of Your Mortgage Loan." In this letter, Defendant PLS stated that the alleged debt was sold to Defendant PENNYMAC on August 25, 2011, however the recorded Assignment of Deed of Trust, hereinafter referred to as ADOT, was not executed until February 6, 2012. The letter also states that Defendant PLS was the new servicer of the loan. Attached as **Exhibit "D"** and incorporated herein by reference is a true and correct copy of the August 25, 2011 Notice of Assignment letter. At the time of this purported sale, the alleged debt was due for the February 1, 2011 payment.

On or about September 30, 2011, Plaintiff received a letter from Defendant PLS informing her that her "delinquent home loan is now managed by "PennyMac". The letter served as an official notification that the transfer of the servicing of her loan was being transferred to Defendant PLS effective September 26, 2011. This is in contradiction of the previous letter PENNYMAC sent to Plaintiff on or about September 8, 2011 which stated that PLS was already the servicer. At the time of this acquisition,

COMPLAINT

the alleged debt was due for the February 1, 2011 payment.  Pursuant to the FDCPA, *15 U.S.C. §1692a(6)(F)(iii),* Defendants PLS and PENNYMAC are debt collectors and not creditors with authorization or a right to enforce the security interest.  Attached as **Exhibit "E"** and incorporated herein by reference is a true and correct copy of a letter sent to Plaintiff by Defendant PLS dated September 30, 2011.

After researching the chain of title to her Property in the San Bernardino County Recorder's Office earlier this year, Plaintiff became aware of transactions that were never disclosed to her.  Upon information and belief, Plaintiff has discovered that Defendants named in this lawsuit have no legal or corporate authority to attempt to collect on the debt, service the debt, or proceed with a non-judicial foreclosure to enforce the security interest.

## A.   Recorded Chain of Title

After the recording of the DOT on May 23, 2011, an ADOT was executed and subsequently recorded on Plaintiff's Property on June 8, 2011.  For consideration of Ten ($10) dollars, the alleged debt was purportedly granted, bargained, sold, assigned, and set over CitiMortgage, Inc., hereinafter referred to as CitiMortgage, was Plaintiff's former servicer before being transferred to Defendant PLS.  Plaintiff alleges CitiMortgage never had an ownership interest in Plaintiff's alleged debt.  At the time of this purported transfer, the debt was contractually due for the February 2011 payment.  Plaintiff adamantly disputes the contents of this instrument.  Attached as **Exhibit "F"** and incorporated herein by reference is a true and correct copy of the 2011 ADOT.

COMPLAINT

After a Notice of Default, hereinafter referred to as NOD, was recorded against Plaintiff's Property on June 16, 2011, a Notice of Trustee's Sale, hereinafter referred to as NOS, was recorded against her Property on October 13, 2011.   Plaintiff references this NOS because it evidences when the alleged debt was first called due.  Pursuant to California *Commercial Code §3118*, the debt is time-barred by operation of law and Defendants are violating the FDCPA by attempting to collect and enforce a debt that is statutorily barred.  Attached as **Exhibit "G"** and incorporated herein by reference is a true and correct copy of the 2011 NOS.

On February 6, 2012, purportedly CitiMortgage granted, assigned and transferred all beneficial interest and rights under the Deed of Trust to Defendant PENNYMAC. This purported transfer is null and void because it violates the requirements of California *Civil Code §1095*.  *Civil Code §1095* states: "When an attorney-in- fact executes an instrument transferring an estate in real property, they must subscribe the name of his principal to it, and his own name as attorney in fact."  The instrument executed in this instrument does not meet this requirement.  The ADOT was executed without subscribing the principal's name and therefore invalidates the transaction.  The transfer is void. *Mitchell v. Benjamin Franklin Bond & Indem. Corp.*, 13 Cal.App.2d 447, 448 [57 P.2d 185]; *Hodge v. Hodge*, 257 Cal.App.2d 31 (1967).  At the time of this purported transfer, the debt was due for the February 1, 2011 payment.  Plaintiff adamantly disputes the contents of this ADOT.  Attached as **Exhibit "H"** and incorporated herein by reference is a true and correct copy of the ADOT.

COMPLAINT

On July 23,2013, a Substitution of Trustee, hereinafter referred to as SOT, was executed and subsequently recorded against Plaintiff's Property on April 15, 2014 attempting to substitute the original trustee to Clear Recon Corp, hereinafter referred to as CRC.

Plaintiff alleges this SOT is invalid pursuant to California *Civil Code §2934a(a)(1)(A)(C)*. Pursuant to *Civil Code §2934a(a)(1)(A)(C)* only the beneficiary of the NOTE can substitute a foreclosing trustee under a DOT. Plaintiff alleges the SOT was not executed by the owner of the Note at the time it was executed but was executed by Defendant PLS who is a debt collector and purportedly represents a debt collector and not a creditor. There is no valid recorded document that evidences the SOT was executed by Plaintiff's beneficiary or creditor or an agent of the true creditor.

In addition, the SOT is null and void because it violates the requirements of California *Civil Code §1095*. *Civil Code §1095* states: "When an attorney-in- fact executes an instrument transferring an estate in real property, they must subscribe the name of his principal to it, and his own name "as attorney in fact.", not "its attorney in fact." The instrument executed in this instrument does not meet this requirement. The SOT was executed without subscribing the principal's name (the true beneficiary) and therefore invalidates the transaction. The transfer is void. *Mitchell v. Benjamin Franklin Bond & Indem. Corp.*, 13 Cal.App.2d 447, 448 [57 P.2d 185]; *Hodge v. Hodge*, 257 Cal.App.2d 31 (1967). Plaintiff adamantly disputes the contents of this SOT. The SOT is null and void because it was not executed by one with authority. Plaintiff adamantly

COMPLAINT

disputes the contents of this SOT.  Attached as **Exhibit "I"** and incorporated herein by reference is a true and correct copy of the SOT.

On April 15, 2014, Defendants wrongfully initiated  foreclosure proceedings by recording another NOD against Plaintiff's Property.  The statements contained in the NOD are in violation of the FDCPA because it falsely represents that Defendant PENNYMAC is the beneficiary of the alleged debt when they were not.  Defendants, and its agents, are attempting to enforce a security interest and take a non-judicial action that is prohibited for them to take, *15 U.S.C. §1692f(6)*.  Plaintiff alleges that the NOD is null and void because the foreclosure sale is being initiated by one without a legal right or authority.  Only a creditor can initiate a foreclosure proceeding.  Defendants are not creditors but are debt collectors.  Attached as **Exhibit "J"** and incorporated herein by reference is a true and correct copy of the 2014 NOD.

On January 2, 2015, another NOS was recorded against Plaintiff's Property seeking to exercise the power of sale contained in the DOT.  Plaintiff alleges that Defendants, as debt collectors, have no legal right or authority to attempt to collect payments from her or enforce a security interest on her Property by taking a non-judicial action against her. Defendants are in violation of *15 U.S.C. §1692f(6)*.  Attached as **Exhibit "K"** and incorporated herein by reference is a true and correct copy of the NOS.

*15 U.S.C. §1692j(a)* states the following:

> It is unlawful to design, compile, and furnish any form knowing that
> such form would be used to create the false belief in a consumer that
> a person other than the creditor of such consumer is participating in
> the collection of or in an attempt to collect a debt such consumer

allegedly owes such creditor, when in fact such person is not so participating.

## VIII.   PLAINTIFF HAS A PRIVATE RIGHT TO ACTION

As a "consumer" with protections under the FDCPA and the Consumer Financial Protections Bureau, hereinafter referred to as CFPB, Congress has afforded the Plaintiffs a "private right of action" for damages caused by the illegal, deceptive and abusive collection activities of a debt collector.  **A "consumer" has the private right to exercise every provision in the consumer protection laws or any other constitutional protections that have been afforded to him as a "consumer".**

The CFPB affirms that Congress intended the FDCPA to be primarily self-enforcing, and the "consumer" does not have to ask permission to enforce it.  The CFPB's Supplemental Amicus Brief for *Bock v. Pressler, LLP*, No. 15-1056 stated the following:

> "The Bureau has a substantial interest in plaintiffs' standing under Article III to bring in federal court to assert their rights under the Fair Debt Collection Practices Act (FDCPA or Act).  Although the Bureau and various other federal Agencies have authority to enforce the Act, *15 U.S.C. § 1692l*, **Congress intended the Act to be "primarily self-enforcing," in that "consumers who have been subjected to collection abuses will be enforcing compliance," S. Rep. No. 95-382, at 5 (1977). An unduly narrow understanding of Article III standing would limit consumers' ability to exercise the Act's private right of action and thereby weaken an important supplement to the Bureau's own enforcement efforts**. *Emphasis added.*

If Defendants feel they have a lawful, bona fide, or verified claim to Plaintiff's personal, private Property, then they MUST file a verified counterclaim pursuant to *15 U.S.C. §1692i.*

16

COMPLAINT

## FIRST CAUSE OF ACTION – VIOLATION OF 15 U.S.C. §1692f(6)
[Against All Defendants and Doe Defendants]

1.  Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

2.  Under the FDCPA, the **entire** FDCPA can apply to a party to whose principal business is enforcing security interests but who nevertheless fits *§1692a(6)'s* general definition of a debt collector.

3.  Defendants are violating *15 U.S.C. §1692f(6)* by perpetrating as creditors and threatening to proceed with a non-judicial foreclosure action on Plaintiff's Property when they have no present right to possession of the Property claimed as collateral through an enforceable security interest and there is no present intention to take possession of the property.

4.  *15 U.S.C. §1692f(6)* regulates more than just the collection of a money debt, it prohibits a non-judicial action to dispossess Plaintiff from her home without a legal ability to do so.  Plaintiff alleges Defendants are debt collectors attempting to enforce a security interest by using unfair or unconscionable means to collect or attempt to collect a debt.

5.  In California only a "creditor" may enforce a foreclosure.  Defendants are debt collectors as defined by the FDCPA, *15 U.S.C. §§1692f(6), 1692a(6)* and is threatening to take action by attempting to enforce a security interest by conducting a non-judicial act and attempting to schedule foreclosure dates on Plaintiff's Property in violation of *15 U.S.C. §1692f(6)*.

17

COMPLAINT

6. Plaintiff alleges the alleged debt was not legally transferred, conveyed, or assigned to Defendant PLS's agent, Defendant PENNYMAC, before the alleged debt fell into default. Any interest or claim claimed by Defendant PENNYMAC was purportedly acquired in February of 2012 when the alleged debt was due for the February 1, 2011 payment. As defined by the FDCPA, they are a debt collector without authority to enforce a security interest.

7. The definition of "debt collector" under *15 U.S.C. §1692a(6)* includes Defendants PLS and PENNYMAC. Defendants **do not** fall into the exception of *15 U.S.C. §1692a(6)(F)(iii)* which specifically states for the purpose of *§1692f(6)*: "…such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does NOT include any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent of such action concerns a debt which was **not** in default at the time it was obtained by such person. In the case at bar, Defendants acquired the servicing of the alleged debt and a purported interest in the alleged debt when the debt was contractually due for the February 1, 2011 payment.

8. Plaintiff alleges that Defendants are falsely representing the status of the alleged debt obligation and are misleading Plaintiff to believe they have the ability to enforce the alleged debt obligation, in which they have no pecuniary equitable, or legal interest. Plaintiff alleges Defendants are violating the FDCPA by attempting to collect and enforce

COMPLAINT

on a debt that is barred by operation of law.  Pursuant to California *Commercial Code §3118*, the alleged debt is barred.

9.  Plaintiff alleges Defendants have gathered whatever data they have in their possession from a third party and not from the original creditor.

10.  At no time has Plaintiff given to Defendants her prior consent, as debt collectors, to contact her nor did Defendants receive express permission from a court of competent jurisdiction in violation of *15 U.S.C. §1692c(a)*.  The law of the FDCPA is very clear.  A debt collector must obtain permission to contact a "consumer" regarding an alleged debt.  If they do not get permission, then they must obtain permission from a court of competent jurisdiction.  Defendants never obtained prior permission from Plaintiff nor a court of competent jurisdiction.  Plaintiff gave permission to creditors not debt collectors when she executed the DOT.

11.  Plaintiff alleges Defendants are attempting to proceed with an illegal debt collection action dubbed a foreclosure when they have no legal authority to do so violating *15 U.S.C. §1692e(5), 15 U.S.C. §1692f(6)(A), (B), and (C)*, and *15 U.S.C. §1692i*.

12.  Every written communication taken by Defendants, including the SOT, NOD, and NOS, is an attempt to collect a debt and are violations of the FDCPA pursuant to *15 U.S.C. §1692e(5), 15 U.S.C. §1692e(6)(B), 15 U.S.C. §1692i, 15 U.S.C. §1692j(a)* and *(b)*.  Defendants continue their violations by sending Plaintiff monthly mortgage statements.

COMPLAINT

13.  Defendants took Plaintiff's personal, private information and made it public, and distributed it to third parties without the Plaintiffs' authorization in violation of *15 U.S.C. §1692c(b)*.  Defendants have refused to provide adequate and sufficient verification and validation of any alleged debt as requested by Plaintiff.  Defendants have stolen Plaintiff's personal, private information and put it into a non-judicial act without Plaintiff's authorization or consent.

14.  The foreclosure documents were created and publicly recorded in violation of *15 U.S.C. §1692j(a)(b)* and was compiled and designed in order to collect payment and enforce the security interest from an illegal sale of the Plaintiff's personal private Property.  Defendant is falsely representing that they have a legal authority to exercise the power of sale on behalf of beneficiary does not exist and even if they did, they would be a debt collector.

15.  Plaintiff allege Defendant's behavior and conduct have injured and harmed Plaintiff with their willful and continuous illegal, deceptive and criminal violations of federal and state law in their attempt to collect an unverified alleged debt initiating and attempting to conduct a non-judicial foreclosure in violation of *15 U.S.C. §1692f(6)*.

16.  Defendants are violating the FDCPA by attempting to collect an alleged debt on behalf of another, and they are using instrumentalities of interstate commerce, and the mail (U.S.P.S.) to communicate with the Plaintiff.

17.  Plaintiff could not have reasonably known of the existence of a claim for violation of *15 U.S.C. §§1692e*, *1692f*, and *1692g* because Defendants fraudulently

COMPLAINT

concealed the fact that they are not entitled to enforce the alleged debt.

18. As a result of Defendants' violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to *15 U.S.C. §1692k(a)(1)*; statutory damages in an amount up to $1,000.00 pursuant to *15 U.S.C. §1692k(a)(2)(A)*; reasonable attorneys' fees, and costs pursuant to *15 U.S.C. §1692(a)(3)*; and declaratory relief, from Defendants herein.

19. In addition to their liability for actual damages caused to Plaintiff, Defendants are also liable for statutory damages pursuant to *15 U.S.C. §1692k*, in an amount to be determined at trial.

20. Defendants' conduct as herein alleged continues to be oppressive, fraudulent, and malicious, and therefore Plaintiff is entitled to punitive and exemplary damages in an amount to be proven at trial.

### SECOND CAUSE OF ACTION – VIOLATION OF CALIFORNIA HOMEOWNER'S BILL OF RIGHTS ("HBOR"), CIVIL CODES §§2924(a)(6), 2924.17
[Against All Defendants and Doe Defendants]

21. Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

22. The California HBOR consists of a series of related bills including two identical bills that were passed on July 2, 2012 by the state Senate and Assembly. Both of these bills ultimately give rights back to borrowers and create a system in which banks must be held accountable for pursuing their own interests above the borrowers.

23. Defendants are in violation of California HBOR (AB 278/SB 900). The law prohibits recording "robodocs" on ALL mortgage-related notices of default and support

21

COMPLAINT

declarations, notices of sale, assignments of deed of trust, and substitutions of trustee recorded in connection with a non-judicial foreclosure, as well as declarations filed in court with respect to any foreclosure proceeding.  Documents must be accurate, complete and supported by competent and relevant evidence.  Defendants have violated the notice by not complying with *Civil Code §2924.17.*  Defendants have failed to provide competent and relevant support to their authorization to proceed with a non-judicial action against Plaintiff's Property as debt collectors.

24.  The law under California HBOR forbids an entity from initiating and/or proceeding with a non-judicial foreclosure **unless** it is the holder of the beneficial interest under the deed of trust, the original or properly substituted trustee under the deed of trust, or designated agent of the holder under the deed of trust, *California Civil Code § 2924(a)(6).*  Plaintiff contend that Defendants are not creditors with the power to enforce the power of sale contained in a DOT, but are debt collectors as defined by the FDCPA, *15 U.S.C. §1692f(6)(F)(iii).*

25.  Defendants have failed to provide an adequate chain of title that would demonstrate their authority to proceed with a non-judicial foreclosure despite Plaintiff's request to provide such documentation and their failure to provide competent and relevant evidence to support the accuracy of their recorded documents.  Copies of loan documents are insufficient.

26.  The law further affords a right to cure violations up to a foreclosure sale but Defendants have failed to correct any "Material Violations".  Pursuant to the law, a

COMPLAINT

mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent can avoid liability for any violation that it has corrected and remedied directly or through a third-party contractor prior to recordation of a trustee's deed upon sale.

27.  The law affords a private right of action for Borrowers to seek a court injunction for a material violation of provisions up until a foreclosure sale is completed, and may seek attorney's fees.  The law under California HBOR forbids an entity from initiating and/or proceeding with a non-judicial foreclosure unless it is the holder of the beneficial interest under the deed of trust, the original or properly substituted trustee under the deed of trust, or designated agent of the holder under the deed of trust, *California Civil Code § 2924(a)(6)*.

### THIRD CAUSE OF ACTION – VIOLATION OF CALIFORNIA CIVIL CODE §§2934a(a)(1)(A)(C)
[Against All Defendants and Doe Defendants]

28.  Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

29.  Pursuant to this statute, only the beneficiary of the note can substitute a trustee under a DOT.  *Civil Code §2934a(a)(1)(A)(C)* states:  The substitution must be signed pursuant to subparagraph (B) of paragraph (1) and the undersigned together hold more than 50 percent of the record beneficial interest of notes secured by the same reap property or of undivided interests in a note secured by real property equivalent to a series transaction.  Plaintiff alleges the SOT was not executed by an entity that holds more than 50 percent interest but a debt collector.

COMPLAINT

30.  Plaintiff alleges the SOT was executed by Defendant PLS, as "its attorney in fact" for a debt collector.  Plaintiff alleges the SOT is null and void pursuant to California *Civil Code §1095.  Civil Code §1095* states: "When an attorney-in-fact executes an instrument transferring an estate in real property, they must subscribe the name of his principal to it, and his own name "**as attorney in fact**."  The signature in this instrument does not meet this requirement.  The SOT was executed without meeting the mandatory requirement and subscribing the **beneficiary** of the note's name and therefore invalidates the transaction.  Using the words "its attorney in fact" or even the correct language, "as attorney in fact", means nothing unless the party is able to produce a witness, who in their own personal knowledge, knows the states that the Power of Attorney is in writing and has not been revoked.  Plaintiff alleges that *Civil Code §1095* applies to SOTs because a properly executed SOT changes which trustee may exercise the power of sale, which is conveyed by the trustee's deed upon sale at a non-judicial sale.

31.  Failure to execute and/or record a ***valid*** SOT is a substantial defect and impacts a right afforded to borrowers to know who the trustee is that will sell their property at a foreclosure sale.  As such, any foreclosure sale would be VOID and not merely VOIDABLE, and no tender is required to seek to file a lawsuit to set aside the sale, if one occurred.

## FOURTH CAUSE OF ACTION – NEGLIGENT REPRESENTATION
[Against All Defendants and Doe Defendants]

32.  Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

24

COMPLAINT

33.  Defendants' conduct, as alleged above and beneath, constitutes an intentional misrepresentation.  California *Civil Code §1710(2)*, sets forth the cause of action for a negligent misrepresentation.  The elements for a cause of action for a negligent misrepresentation are (1) defendant makes a representation as to a past or existing material fact, (2) defendant made the misrepresentation without any reasonable grounds for believing it to be true, (3) the representation was made with the intent to induce the plaintiff to rely upon it, (4) plaintiff was unaware of the falsity of the representation and acted in justifiable reliance on the representation, and (5) damages.

34.  Plaintiff alleges Defendants purposely provided Plaintiff with false information in order to induce her to pay payments to them in which they have no authority or right to collect and to proceed with a non-judicial action against Plaintiff's Property.

35.  Furthermore, Plaintiff alleges that Defendants are falsely misrepresenting the true creditor of the alleged debt.

36.  Plaintiff further seeks restitution, disgorgement of sums wrongfully obtained, costs of suit, reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

## FIFTH CAUSE OF ACTION – CANCELLATION OF INSTRUMENTS
### [Against All Defendants and Doe Defendants]

37.  Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

38.  Plaintiff has a reasonable apprehension that the wrongful, illegal, and false instruments created, published, and recorded by the Defendants herein, if left

COMPLAINT

outstanding, may continue to cause serious injury to Plaintiff.  Plaintiff request this court to adjudge and order Defendants to deliver up the DOT executed by Plaintiff and all other documents that relates to the DOT so that they may be canceled, or in the alternative, to declare the them void and to be without force and effect.

39.  Plaintiff is further informed and believes and thereon alleges that under *California Code of Civil Procedure §3413*, for an instrument to be subject to a cause of action for cancellation, the instrument must appear to be valid.  The foreclosure documents appear on their face to be valid.

40.  Plaintiff alleges that Defendants did not have executed recorded or unrecorded documents showing any legal effective assignments to it and that it therefore has no standing to commence a foreclosure action against Plaintiff's Property.  In other words, Defendants, and its agents, are debt collectors and not creditors and have no enforceable rights against Plaintiff's Property.

41.  As demonstrated in this Complaint, the foreclosure documents executed by Defendants are fraudulent and violate California's non-judicial statute, penal law and federal laws and ought to be cancelled.

## SIXTH CAUSE OF ACTION – VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, ET SEQ.
[Against All Defendants and Doe Defendants]

42.  Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

43.  California *Business & Professions Code § 17200, et. seq.*, prohibits acts of

COMPLAINT

unfair competition, which means and includes any "fraudulent business act or practice…" and conduct which is "likely to deceive" and is "fraudulent" within the meaning of *Section 17200*.

44.  As more fully described above and below, Defendants, as debt collectors, are doing certain acts and practices, such as attempting to collect on a debt to which they have no right or authority, which are likely to deceive, constituting a fraudulent business act or practice.

45.  Specifically, Defendants are engaging in deceptive business practices with respect to mortgage loan servicing, assignments of notes and deeds of trust, the process of initiating related matters by:

a) Assessing improper or excessive fees;
b) Improperly characterizing customers' accounts as being in default or delinquent status to generate unwarranted fees:
c) Instituting improper or premature foreclosure proceedings to generate unwarranted fees;
d) Failing to provide adequate statement information to customers regarding the status of their accounts, payments owed, and/or basis for fees assessed;
e) Seeking to collect and collecting various improper fees, costs and charges that are either not legally due under the mortgage contract or California law, or that are in excess of amounts legally due;
f) Mishandling borrowers' documents resulting in fraudulent defaults and foreclosures;
g) Treating borrower as in default on their loans even though the borrowers are under no obligation to make payments to Defendants, or have otherwise complied with mortgage requirements or California law.
h) Failing to disclose the fees, costs and charges allowable under the contract;
i) Ignoring Borrowers' Qualified Written Request and Borrowers' demand to produce the original Promissory Note or comply with Borrowers' request for an accounting of all proceeds/payments involved with Borrowers' loan;
j) Executing, manufacturing, creating and recording false, fraudulent, forged and misleading deeds, assignments, notice of sale/default documents; and
k) Failing to disclose the principal for which documents were being

COMPLAINT

executed and recorded in violation of *Cal. Civ. Code section 1095*;
l) Acting as beneficiaries and trustees without the legal authority to do so.

46.  Defendants failed to act in good faith as they took and charged fees for services but did no render them competently and in compliance with applicable law.

47.  Moreover, Defendants are engaging in a uniform pattern and practice of unfair and over-aggressive servicing that resulted in the assessment of unwarranted and unfair fees against California consumers, and premature default resulting in unfair and illegal foreclosure proceedings.  The scheme implemented by Defendants were designed to defraud not just Plaintiff, but all California consumers and enrich Defendants.

48.  The foregoing acts and practices have caused substantial harm to not only Plaintiff but to all its California consumers and to all California taxpayers.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for judgment against Defendants, as follows:

1.  For compensatory, special, and general damages in an amount according to proof at trial, but not less than $1,000,000.00 against all Defendants;

2.  For punitive and exemplary damages in an amount to be determined by the Court against Defendants;

3.  For an order compelling Defendants to remove any instrument which does or could be construed as constituting a cloud upon Plaintiff's title to the Property;

4.  For a declaratory judgment finding that Defendants do not have any legally cognizable rights as to Plaintiff, the Property, Plaintiff's alleged debt, tendered to and executed by Plaintiff;

COMPLAINT

5. For the Court to issue an order restraining Defendants, their agents, or employees from continuing or initiating any action against the Property and enjoining Defendants, their agents, or employees from doing so during the pendency of this matter;

6. For reasonable cost of suit incurred in this action; and

7. For reasonable attorney's fees; and

8. For such additional and further relief as the Court may deem proper and reasonable.

DATED: December 15, 2017

Respectfully submitted by:

Ardreda Johnson
Plaintiff

29

COMPLAINT

**VERIFICATION**

I, Ardreda Johnson, an individual, am the Plaintiff in the above-entitled action.  I have read the foregoing complaint and know the contents thereof.  The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed in Rancho Cucamonga, California on December 15, 2017

Ardreda Johnson
Plaintiff

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "A"

INVESTORS TITLE COMPANY

RECORDING REQUESTED BY
FIRST NLC FINANCIAL SERVICES, I

AND WHEN RECORDED MAIL TO
FIRST NLC FINANCIAL SERVICES, LLC
700 W. HILLSBORO BLVD. B-1 #204
DEERFIELD BEACH, FLORIDA 33441

*14141081*

0227-831-17

Recorded in Official Record   nty of San Bernardino   11/20/2006
8:00 AM
BS
**LARRY WALKER**
Auditor/Controller — Recorder

771 SoCal Document Processing Inc

Doc#:   **2006 — 0788066**   | Titles:   1 | Pages:   21



| Fees | 68.00 |
| Taxes | 0.00 |
| Other | 0.00 |
| PAID | $68.00 |

[Space Above This Line For Recording Data]

# DEED OF TRUST

MIN: 100195910003465096

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated **November 07, 2006**                , together with all Riders to this document.

(B)  "Borrower" is **ARDREDA JOHNSON, AS A SINGLE WOMAN**

Borrower is the trustor under this Security Instrument.

(C)  "Lender" is **FIRST NLC FINANCIAL SERVICES, LLC**
Lender is a **LIMITED LIABILITY COMPANY**                                              organized and existing under
the laws of **THE STATE OF FLORIDA**                                              . Lender's address is
**700 W. HILLSBORO BLVD. B-1 #204, DEERFIELD BEACH, FLORIDA  33441**

(D)  "Trustee" is **JEFFREY M. HENSCHEL**
**700 W. HILLSBORO BLVD. B-1 #204, DEERFIELD BEACH, FL 33441**

(E)  "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F)  "Note" means the promissory note signed by Borrower and dated **November 07, 2006**                . The Note states that Borrower owes Lender **Three Hundred Eighty Eight Thousand Five Hundred and no/100**
Dollars (U.S. $ **388,500.00**            ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **December 01, 2036**

(G)  "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

CALIFORNIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    **Form 3005 1/01**
GREATLAND ■
ITEM 9926L1 (0011)—MERS                    *(Page 1 of 12 pages)*                    To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

(H) "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [X] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [X] Other(s) [specify] **Interest Only Rider** |
| [ ] 1-4 Family Rider | [ ] Biweekly Payment Rider | |

(J) "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "**Escrow Items**" means those items that are described in Section 3.

(N) "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**CALIFORNIA**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

ITEM 9926L2 (0011)—MERS

*(Page 2 of 12 pages)*

**Form 3005 1/01**

GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

32

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **County**
[Type of Recording Jurisdiction]

of           **San Bernardino**                    :
           [Name of Recording Jurisdiction]

**SEE ATTACHED LEGAL DESCRIPTION** *as Exhibit "A"*

which currently has the address of                    **7352 STONEHAVEN PLACE**
                                                    [Street]

**RANCHO CUCAMONGA**          , California      **91730**          ("Property Address"):
       [City]                                  [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1.    Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

**CALIFORNIA—**Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                                   **Form 3005** 1/01
                                                                                                                    **GREATLAND ■**
ITEM 9926L3 (0011)—**MERS**                          *(Page 3 of 12 pages)*                    To Order Call: 1-800-530-9393 □Fax: 616-791-1131

*33*

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.     **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.     **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in

CALIFORNIA—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                                              **Form 3005 1/01**

writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.    Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.    Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this

CALIFORNIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 9926L6 (0011)—MERS

*(Page 6 of 12 pages)*

Form 3005 1/01
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

36

Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has—if any—with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period,

CALIFORNIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 9926L7 (0011)—MERS

*(Page 7 of 12 pages)*

Form 3005 1/01
GREATLAND ■
To Order Call: 1-800-530-9393 □Fax: 616-791-1131

37

Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this

CALIFORNIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   **Form 3005 1/01**
GREATLAND ■
ITEM 9926L8 (0011)—MERS                         *(Page 8 of 12 pages)*        To Order Call: 1-800-530-9393 □Fax: 616-791-1131

*38*

Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale

CALIFORNIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 9926L9 (0011)—MERS

*(Page 9 of 12 pages)*

Form 3005 1/01

GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

*39*

of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance

affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

CALIFORNIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 9926L11 (0011)—MERS

*(Page 11 of 12 pages)*

Form 3005 1/01

GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

41

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 12 of this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
ARDREDA JOHNSON           -Borrower                                    -Borrower


_____ (Seal)          _____ (Seal)
                          -Borrower                                    -Borrower


_____ (Seal)          _____ (Seal)
                          -Borrower                                    -Borrower


Witness:                                   Witness:

_____                  _____


State of California        } ss.
County of ~~San Bernardino~~ *Los Angeles* }

On *November 7, 2006* before me, *Lillian Gonzalez, Notary Public*

personally appeared **ARDREDA JOHNSON**


~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

LILLIAN GONZALEZ
Commission # 1437036
Notary Public - California
Los Angeles County
My Comm. Expires Aug 30, 2007

CALIFORNIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3005 1/01
                                                                                 GREATLAND ■
ITEM 9926L12 (0011)—MERS                    *(Page 12 of 12 pages)*     To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

42

**Exhibit A**
**LEGAL DESCRIPTION**

All that certain real property in the County of SAN BERNARDINO, State of California, described as follows:

PARCEL 1:

LOT(S) 17 OF TRACT NO. 14407, IN THE CITY OF RANCHO CUCAMONGA, COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 248 PAGE(S) 14 THROUGH 19 INCLUSIVE, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN BERNARDINO COUNTY ON MAY 26, 1992;

EXCEPTING THEREFROM NON-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, MAINTENANCE, DRAINAGE, REPAIR, ENCROACHMENT, SUPPORT, AND FOR OTHER PURPOSES, ALL AS DESCRIBED IN THE DECLARATION OF RESTRICTIONS OF NORTHVIEW PLANNED DEVELOPMENT, RECORDED ON AUGUST 12, 1992, AS INSTRUMENT NO. 92-334969 IN THE OFFICIAL RECORDS OF SAID COUNTY AND ALL AMENDMENTS, MODIFICATIONS, OR SUPPLEMENTS THERETO (HEREINAFTER THE "DECLARATION").

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES, LYING BELOW A DEPTH OF 500 FEET, WITHOUT THE RIGHT OF SURFACE ENTRY, AS GRANTED TO WESTERN SUPPLY CORP. BY DEED RECORDED SEPTEMBER 17, 1979, IN BOOK 9772, PAGE 1262, OFFICIAL RECORDS.

EXCEPTING THEREFROM ALL MINERALS, OIL, GAS, PETROLEUM, OTHER HYDROCARBON SUBSTANCES AND ALL UNDERGROUND WATER IN OR UNDER OR WHICH MAY BE PRODUCED FROM SAID LAND WHICH UNDERLIES A PLANE PARALLEL TO AND 500 FEET FROM THE PRESENT SURFACE OF SAID LAND FOR THE PURPOSE OF PROSPECTING FOR, THE EXPLORATION, DEVELOPMENT, PRODUCTION, EXTRACTION AND TAKING OF SAID MINERALS, OIL, GAS, PETROLEUM. OTHER HYDROCARBON SUBSTANCES AND WATER FROM SAID LAND BY MEANS OF MINES, WELLS, DERRICKS, OTHER EQUIPMENT FROM SURFACE LOCATIONS ON ADJOINING OR NEIGHBORING LAND OR LYING OUTSIDE OF THE ABOVE DESCRIBED LAND, IT BEING UNDERSTOOD THAT THE OWNER OF SUCH MINERALS, OIL, GAS, PETROLEUM, OTHER HYDROCARBON SUBSTANCES AND WATER AS SET FORTH ABOVE, SHALL HAVE NO RIGHT TO ENTER UPON THE SAID LAND OR ANY PORTION THEREOF ABOVE SAID PLANE PARALLEL TO AND 500 FEET BELOW THE PRESENT SURFACE OF THE SAID LAND FOR ANY PURPOSE WHATSOEVER.

PARCEL NO. 2:

NON-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, ENCROACHMENT, DRAINAGE, REPAIR, MAINTENANCE, SUPPORT, AND FOR OTHER PURPOSES, ALL AS DESCRIBED IN THE DECLARATION.

PARCEL NO. 3:

NON-EXCLUSIVE EASEMENT ON AND OVER THE "COMMON AREA", AS DEFINED IN THE
DECLARATION OR ACCESS, USE, OCCUPANCY, ENJOYMENT, INGRESS TO, AND EGRESS
FROM THE AMENITIES LOCATED THEREON, SUBJECT TO THE TERMS AND PROVISIONS
OF THE DECLARATION. THIS EASEMENT IS APPURTENANT TO PARCEL 1 ABOVE
DESCRIBED. THE COMMON AREA IS FOR THE USE OWNERS OF LOTS WHICH ARE
SUBJECT TO THE DECLARATION AND IS NOT FOR THE USE OF THE GENERAL PUBLIC.

APN No:   0227-831-17-0-000

# ADJUSTABLE RATE RIDER

**(LIBOR Six-Month Index (As Published In *The Wall Street Journal*)—Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this **7th** day of **November 2006** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to

**FIRST NLC FINANCIAL SERVICES, LLC**

("Lender") of the same date and covering the property described in the Security Instrument and located at:

**7352 STONEHAVEN PLACE**
**RANCHO CUCAMONGA, CA 91730**

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of **7.0000**%. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A)   Change Dates**

The interest rate I will pay may change on the first day of **December 2008** , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B)   The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C)   Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding

**Six and One Quarter**

percentage points ( **6.250**%) to the Current Index. Subject to the limits stated in Section 4(D) below, this amount will be my new interest rate until the next Change Date.

MULTISTATE ADJUSTABLE RATE RIDER—LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*)—Single Family

*(Page 1 of 3 pages)*

5243611342
100195910003465096

FNLC Form 33029L1  (04052005)

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D)  Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **10.0000**% or less than **7.0000**%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One and One Half**

percentage points ( **1.5000**%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **14.0000**% or less than **7.0000**%.

**(E)  Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)  Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me to and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

*(Page 2 of 3 pages)*

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Adjustable Rate Rider.

_____ (Seal)       _____ (Seal)
ARDREDA JOHNSON          -Borrower                                -Borrower


_____ (Seal)       _____ (Seal)
                         -Borrower                                -Borrower


_____ (Seal)       _____ (Seal)
                         -Borrower                                -Borrower


*(Page 3 of 3 pages)*

100195910003465096                                    FNLC Form 33029L3  (04052005)

**INTEREST-ONLY ADDENDUM**
**TO ADJUSTABLE RATE RIDER**

PROPERTY ADDRESS: **7352 STONEHAVEN PLACE, RANCHO CUCAMONGA, CA  91730**

**THIS ADDENDUM** is made this    **7th day of  November 2006**            and is incorporated into and intended to form a part of the Adjustable Rate Note (the "Note") dated the same date as this Addendum, executed by the undersigned and payable to
**FIRST NLC FINANCIAL SERVICES, LLC**
(the "Lender").

**THIS ADDENDUM** supersedes Sections 3(A), 3(B), and 4(C) of the Rider.  None of the other provisions of the Note are changed by this Addendum.

3.    **PAYMENTS**

    (A)    **Time and Place of Payments**

        I will pay interest by making payments every month for the first    **60**    payments (the "Interest-Only Period") in the amount sufficient to pay interest as it accrues.  I will pay principal and interest by making payments every month thereafter for the next    **300**    payments in an amount sufficient to fully amortize the outstanding principal balance of the Note at the end of the Interest-Only Period over the remaining term of the Note in equal monthly payments.

        I will make monthly payments on the first day of each month beginning on    **01/01/2007**        . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal.  If, on    **12/01/2036**    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

        I will make payments at
**700 W. HILLSBORO BLVD. B-1 #204, DEERFIELD BEACH, FLORIDA  33441**                    ,
or at a different place if required by the Note Holder.

(B)    **Amount of My Initial Monthly Payments**

        Each of my initial monthly payments will be in the amount of U.S.  $ **2,266.25**            .  This payment is based on the original principal balance of the Note.  This payment amount may change.

4.    **INTEREST RATE AND MONTHLY PAYMENT CHANGES**

    (C)    **Calculation of Changes**

        Before each Change Date, the Note Holder will calculate my new interest rate by adding    **Six and One Quarter**        percentage point(s) (    **6.250**%) to the Current Index for such Change Date.  Subject to the limits stated in Section 4(D), this amount will be my new interest rate until the next Change Date.

        During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest.  This will be the amount of my monthly

48

payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during the Interest-Only Period.  If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance.  At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note.  The result of this calculation will be the new amount of my monthly payment.  After the end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments.

ARDREDA JOHNSON

2 of 2

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this        **7th**      day of **November 2006**                ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to

**FIRST NLC FINANCIAL SERVICES, LLC**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**7352 STONEHAVEN PLACE
RANCHO CUCAMONGA, CA 91730**

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a
condominium project known as:

**NORTH VIEW HOA**
[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium
Project (the "Owners Association") holds title to property for the benefit or use of its members or
shareholders, the Property also includes Borrower's interest in the Owners Association and the uses,
proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under
the Condominium Project's Constituent Documents. The "Constituent Documents" are the:
(i) Declaration or any other document which creates the Condominium Project; (ii) by-laws;
(iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally
accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is
satisfactory to Lender and which provides insurance coverage in the amounts (including
deductible levels), for the periods, and against loss by fire, hazards included within the term
"extended coverage," and any other hazards, including, but not limited to, earthquakes and floods,
from which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the
Periodic Payment to Lender of the yearly premium installments for property insurance on the
Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage
on the Property is deemed satisfied to the extent that the required coverage is provided by the
Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance
coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair
following a loss to the Property, whether to the unit or to common elements, any proceeds payable
to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by
the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

MULTISTATE CONDOMINIUM RIDER—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3140 1/01

GREATLAND ■
ITEM 1623L1 (0011)                      *(Page 1 of 2 pages)*          To Order Call: 1-800-530-9393 □Fax: 616-791-1131

**100195910003465096**

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in pages 1 and 2 of this Condominium Rider.

_____ (Seal)                    _____ (Seal)
ARDREDA JOHNSON            -Borrower                                                              -Borrower


_____ (Seal)                    _____ (Seal)
                                      -Borrower                                                              -Borrower


_____ (Seal)                    _____ (Seal)
                                      -Borrower                                                              -Borrower


**MULTISTATE CONDOMINIUM RIDER—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
**Form 3140 1/01**

GREATLAND ■
ITEM 1623L2 (0011)                    *(Page 2 of 2 pages)*                    To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "B"

# ADJUSTABLE RATE NOTE

### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*)—Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| | | |
|---|---|---|
| November 07, 2006 | CITY OF INDUSTRY | California |
| [Date] | [City] | [State] |
| | 7352 STONEHAVEN PLACE | |
| | RANCHO CUCAMONGA, CA 91730 | |

[Property Address]

### 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **388,500.00** (this amount is called "Principal"), plus interest, to the order of Lender. Lender is

**FIRST NLC FINANCIAL SERVICES, LLC**

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **7.0000%**. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3.  PAYMENTS

(A)  **Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on **January 01, 2007**

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **December 01, 2036**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at

**FIRST NLC FINANCIAL SERVICES, LLC**

**700 W. HILLSBORO BLVD. B-1 #204, DEERFIELD BEACH, FL 33441**

or at a different place if required by the Note Holder.

(B)  **Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ **2,266.25**. This amount may change.

(C)  **Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

---

MULTISTATE ADJUSTABLE RATE NOTE—LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*)—
Single Family

FNLC Form 33019L1 (04052005)

5243611342
100195910003465096

4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
   (A)   Change Dates
   The interest rate I will pay may change on the first day of **December 2008**                    , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."
   (B)   The Index
   Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
   If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
   (C)   Calculation of Changes
   Before each Change Date, the Note Holder will calculate my new interest rate by adding
                                    **Six and One Quarter**
percentage points (        **6.2500%**) to the Current Index.  Subject to the limits stated in Section 4(D) below, this amount will be my new interest rate until the next Change Date.

   The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.
   (D)   Limits on Interest Rate Changes
   The interest rate I am required to pay at the first Change Date will not be greater than        **10.0000%** or less than **7.0000%**.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One and One Half**
percentage points (        **1.5000%**) from the rate of interest I have been paying for the preceding        **6**        months. My interest rate will never be greater than        **14.0000%** or less than        **7.0000%**.
   (E)   Effective Date of Changes
   My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.
   (F)   Notice of Changes
   The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5.   BORROWER'S RIGHT TO PREPAY THIS SECTION IS SUPERCEDED BY THE ATTACHED PREPAYMENT RIDE
   I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.
   I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6.   LOAN CHARGES
   If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

### 7. BORROWER'S FAILURE TO PAY AS REQUIRED

#### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **Ten** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.0000%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

#### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

#### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

#### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

#### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower has executed and acknowledges receipt of pages 1 through 4 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)        _____ (Seal)
                                    -Borrower                                        -Borrower
**ARDREDA JOHNSON**

_____ (Seal)        _____ (Seal)
                                    -Borrower                                        -Borrower

_____ (Seal)        _____ (Seal)
                                    -Borrower                                        -Borrower

*[Sign Original Only]*

WITHOUT RECOURSE, PAY TO THE ORDER OF Citi Mortgage, Inc

BY _____
FIRST NLC FINANCIAL SERVICE, LLC
THOMAS CZOCHANSKI
VICE PRESIDENT, CFO

## INTEREST-ONLY ADDENDUM
## TO ADJUSTABLE RATE PROMISSORY NOTE

PROPERTY ADDRESS: **7352 STONEHAVEN PLACE, RANCHO CUCAMONGA, CA 91730**

THIS ADDENDUM is made this **7th** day of **November 2006**         and is incorporated into and intended to form a part of the Adjustable Rate Note (the "Note") dated the same date as this Addendum, executed by the undersigned and payable to
**FIRST NLC FINANCIAL SERVICES, LLC**
(the "Lender").

THIS ADDENDUM supersedes Sections 3(A), 3(B), 4(C) and 7(A) of the Rider.  None of the other provisions of the Note are changed by this Addendum.

3.     **PAYMENTS**

   (A)     **Time and Place of Payments**

          I will pay interest by making payments every month for the first    **60**    payments (the "Interest-Only Period") in the amount sufficient to pay interest as it accrues.  I will pay principal and interest by making payments every month thereafter for the next    **300**    payments in an amount sufficient to fully amortize the outstanding principal balance of the Note at the end of the Interest-Only Period over the remaining term of the Note in equal monthly payments.

          I will make monthly payments on the first day of each month beginning on **01/01/2007**
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal.  If, on **12/01/2036**        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

          I will make payments at
**700 W. HILLSBORO BLVD. B-1 #204, DEERFIELD BEACH, FLORIDA 33441**
or at a different place if required by the Note Holder.

(B)     **Amount of My Initial Monthly Payments**

          Each of my initial monthly payments will be in the amount of U.S.  $**2,266.25**           .  This payment is based on the original principal balance of the Note.  This payment amount may change.

4.     **INTEREST RATE AND MONTHLY PAYMENT CHANGES**

   (C)     **Calculation of Changes**

          Before each Change Date, the Note Holder will calculate my new interest rate by adding
   **Six and One Quarter**          percentage point(s) (    **6.250**%) to the Current Index for such Change Date.   Subject to the limits stated in Section 4(D), this amount will be my new interest rate until the next Change Date.

          During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest.  This will be the amount of my monthly

1 of 2

100195910003465096                                                                           FNLC Form 33034L1

*56*

payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during the Interest-Only Period. If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance. At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment. After the end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments.

7.    **BORROWER'S FAILURE TO PAY AS REQUIRED**

   (A)    **Late Charge for Overdue Payments**

   If the Note Holder has not received the full amount of any monthly payment by the end of     **Ten** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.0000**% of my overdue payment on interest during the Interest-Only Period, and **5.0000**% of my overdue payment of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

ARDREDA JOHNSON

100195910003465096                                                                                                    FNLC Form 33034L2

# PREPAYMENT RIDER
## {ATTACH TO NOTE}

This Prepayment Rider is made this     7th    day of   **November 2006**                              , and is incorporated into and shall be deemed to amend and supplement the note of even date herewith given by the undersigned ("Borrower") to
**FIRST NLC FINANCIAL SERVICES, LLC**
("Lender") in the original principal sum of   $ **388,500.00**                         hereinafter called the "Note", which Note is secured by the Security Instrument of even date herewith, hereinafter called the "Mortgage", which Mortgage covers the property described as follows:

See Attached Legal Description

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, the Borrower and Lender further covenant and agree as follows:

PREPAYMENT. Unless otherwise prohibited by law, and if prohibited by law then the maximum prepayment penalty allowed under law shall be applied, I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Lender or any subsequent holder of the Note (the "Note Holder") in writing that I am doing so. However, if I fail to do so, the Note Holder may in its discretion apply as a prepayment the portion of my payment which exceeds the payment and charges due the Note Holder at that time. If I make a full prepayment or a partial prepayment, I will pay the prepayment charges set forth below. I shall incur a prepayment charge, as permitted by law, if within     **2**     year(s) of the execution of the Note and the deed of trust secured by the Note I prepay an amount in excess of 20 percent of the Note's original principal balance in any 12-month period. The prepayment charge shall be in an amount equal to 6 months' advance interest on the amount prepaid in excess of 20 percent of the unpaid principal balance of the Note. The Note Holder will use all of my prepayments to reduce the amount of the principal that I owe under the Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

CONFLICT IN PROVISIONS. In the event that any of the terms, conditions and covenants contained in this Prepayment Rider shall be in conflict with any terms, conditions and covenants contained in the Note, the terms conditions and covenants in this Prepayment Rider shall supercede and control those contained in the Note.

BY SIGNING BELOW, the Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

_____ (Seal)        _____ (Seal)
ARDREDA JOHNSON

_____ (Seal)        _____ (Seal)

_____ (Seal)        _____ (Seal)

100195910003465096                                                    FNLC Form 33099L0
                                                                      Prepay Rider CA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "C"



**Certified Forensic Loan Auditors**

## DESCRIPTION OF SECURITY FROM BLOOMBERG



## DEAL DESCRIPTION



*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*

Page | 27

59



**Certified Forensic Loan Auditors**

## SECURITY DESCRIPTION
**Key credit trigger test failed and credit reserves appear to have been depleted in this investment class within trust**



## STRUCTURED FINANCE NOTES SCREEN
**Lists the primary parties to the securitization transaction/ <u>Bear Stearns Financial Products, Inc.</u> may have at least partially offset the risks and losses of ownership through the use of credit default swaps.**



Page | 28

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*



Certified Forensic Loan Auditors

# AFFIDAVIT OF FACTS

STATE OF _Cal for n_ )
                                      ) sv.: AFFIDAVIT
COUNTY OF _Orange_ )

**RE: ARDREDA JOHNSON**

I, MICHAEL CARRIGAN, a citizen of the United States and the State of California over the age of 21 years, and declare as follows, under penalty of perjury that the facts stated herein are true, correct and complete. The undersigned believes them to be true and admissible as evidence in a court of law, and if called upon as a witness, will testify as stated herein:

1.  That I am a subscriber of the Bloomberg Professional Service, certified and licensed to use such service. I have completed the required training and engaged in continuing education with Bloomberg – both online and at Bloomberg live training events, to stay abreast with Bloomberg's latest progress and developments. I have the requisite knowledge and the trained ability to navigate and perform effective searches on the Bloomberg terminal.

2.  I am a Certified Mortgage Securitization Auditor and my qualifications, expertise and experience provide me with the background necessary to certify the audit services and to be qualified as an expert in this field. I have produced approximately one thousand seven hundred Securitized Analysis Reports in residential real estate mortgage investigation in 40 states and Puerto Rico, have testified as an expert witness, and have trained auditors in California, Florida, Nevada, New York and Virginia and via the Internet in webinar format.

3.  I have the trained skills and qualifications to navigate and perform searches on the Bloomberg terminal in regards to the automated tracking and determination of mortgage and loan related documents and information.

4.  The contents of this report are factual, but it is provided for information purposes only and is not to be construed as "legal advice."[1]

---

[1] The client has been strongly advised to seek legal consultation from a competent legal professional in connection with the contents of this report and how to properly use it.

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*



Certified Forensic Loan Auditors

5.    On April 14, 2014, I researched the Bloomberg online Database at the request of ARDREDA JOHNSON whose property address is 7352 Stonehaven place, Rancho Cucamonga, CA 91730.

6.    Based on the information I was provided, ARDREDA JOHNSON signed a Promissory Note in favor of FIRST NLC FINANCIAL SERVICES, LLC on November 07, 2006.

7.    Loan level detail was not identified in any publically reporting trust.  A trust meeting the qualifications for securitization is identified as the CITIGROUP MORTGAGE LOAN TRUST 2006-AR9 with the Master Servicer being CITIMORTGAGE, INC.; the Sponsor / Seller being CITIGROUP GLOBAL MARKETS REALTY CORP. and the Depositor being CITIGROUP MORTGAGE LOAN TRUST INC.

8.    The basis of the identification of Loan in CITIGROUP MORTGAGE LOAN TRUST 2006-AR9 was made from the following factors/information that exactly correspond with ARDREDA JOHNSON'S loan documents provided: Original Amount: $388,500.00; Origination Date: November 07, 2006; Location of Property: CA; Property Type: Single Family Residence; Occupancy: Owner Occupied; Zip Code: 91730; Type Loan: Variable 30 Year Loan.

9.    Generally, if the Deed of Trust and the Note are not together with the same entity, there can be no legal enforcement of the Note. The deed of trust enforces the Note and provides the capability for the lender to foreclose on the property. Thus, if the Deed of Trust and the Note are separated, foreclosure legally cannot occur. The Note cannot be enforced by the Deed of Trust if each contains a different mortgagee/beneficiary; and, if the Deed of trust is not itself a legally enforceable instrument, there can be no valid foreclosure on the homeowners' property.

10.   No Entity can be a CREDITOR if they do not hold/own the asset in question (i.e. the NOTE and/or the property); a Mortgage Pass Through Trust (i.e. R.E.M.I.C., as defined in Title 26, Subtitle A, Chapter 1, Subchapter M, Part II §§ 850-862) cannot hold assets, for if they do, their tax exempt status is violated and the Trust itself is void ab initio.  Therefore, either the Trust has either voided its intended Tax Free Status, or the asset is not in fact owned by it.

11.   In the event that the loan was sold, pooled and turned into a security, the alleged holder can no longer claim that it is a real party of interest, as the original lender has been paid in full.

12.   Further said, once the Note was converted into a stock, or stock equivalent, it is no longer a Note. If both the Note and the stock, or stock equivalent, exist at the same time, that is known as double dipping. Double dipping is a form of securities fraud.

13.   Once a loan has been securitized, which the aforementioned loan may have been done many times, it forever loses its security component (i.e., the Deed of Trust), and the right to foreclose



Certified Forensic Loan Auditors

through the Deed of Trust is forever lost.

14.   The Promissory Note may have been converted into a stock as a permanent fixture. It is now a stock and governed as a stock under the rules and regulations of the SEC; hence, the requirement for the filings of the registration statements, pooling and servicing agreements, form 424B-5, et.al. There is no evidence on Record to indicate that the Deed of Trust was ever transferred concurrently with the purported legal transfer of the Note, such that the Deed of Trust and Note has been irrevocably separated, thus making a nullity out of the purported security in a property, as claimed (Federal Rules of Evidence Rules 901 & 902).

15.   Careful review and examination reveals that this may be a securitized loan. The Assignments of Mortgage pretended to be an A to D transaction when in fact the foreclosing party was hiding the A to B, B to C, and C to D facts of true sales, where A is the original lender, B the sponsor/seller, C the bankruptcy-remote depositor, and D, the issuing mortgage-backed securities trust. They also hid the legal SEC filings, governing the transaction according to our findings. But to be controlled by those SEC filings, the true original loan Note and Deed of Trust had to be provided by the Document Custodian certified to have been in possession of them by them on or about November 30, 2006. Because it was not, the claim of ownership by the Trust cannot be substantiated and the loan servicing rights not established at law by agreement. I supply this report as written testimony and am available for oral testimony.

By:

_____

Michael Carrigan
Certified Mortgage Securitization Auditor / Bloomberg Specialist

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "D"

1.



P.O. Box 514387
Los Angeles, CA 90051-4387

**Notification of Assignment,
Sale or Transfer of Your
Mortgage Loan**

September 08, 2011

0000204-0000204 885842

Ardreda Johnson
7352 Stonehaven Pl
Rancho Cucamonga CA 91730

Re:  Loan Number: 1000039145
7352 Stonehaven Pl Rancho Cucamonga CA 91730

Dear Ardreda Johnson:

The purpose of this notice is to inform you that your mortgage loan referenced above was sold to
PennyMac Mortgage Opportunity Fund Investors, LLC on August 25, 2011. PennyMac Mortgage
Opportunity Fund Investors, LLC does not service your loan. This letter will provide you with
information on how to contact your new servicer having authority to act on behalf of PennyMac
Mortgage Opportunity Fund Investors, LLC. Please note, this letter does not require any action to be
taken on your part but is simply a courtesy notification of the assignment, sale or transfer of your
mortgage loan. Below is your new servicer's contact information should you have any questions or
concerns about your loan.

The transfer of mortgage loans is a standard part of the mortgage business for many of the nation's
mortgage lenders. The transfer of your mortgage loan to PennyMac Mortgage Opportunity Fund
Investors, LLC does not affect any terms or conditions of the Mortgage/Deed of Trust or Note. The
transfer of ownership of your mortgage loan has not been publicly recorded.

It is important that you send your monthly loan payments directly to the new servicer at the address
below and on your monthly statement. Please do not send payments to PennyMac Mortgage
Opportunity Fund Investors, LLC as they may be returned to you, which could result in late charges and
your account becoming past due. All correspondence and inquiries concerning your mortgage loan
also should be addressed to your new servicer. We rely on the mortgage servicer to manage your
mortgage on our behalf and work directly with you. Your new servicer has authority to act on our behalf
with regard to the administration of your mortgage loan and respond to any questions about your loan.

New Servicer: PennyMac Loan Services, 27001 Agoura Road STE 350 Calabasas CA 91301
Address for sending payments: P.O. Box 30597 Los Angeles CA 90030
Toll-free telephone number for inquiries: 866-601-3518
Website: www.PennyMacUSA.com

If you have questions regarding this notice, you may contact PennyMac Mortgage Opportunity Fund
Investors, LLC at 27001 Agoura Road STE 330 Calabasas CA 91301, 818-224-7442.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "E"

1 

P.O. Box 514387
Los Angeles CA 90051-4387

Date:  September 30, 2011

0991024-0081294 000115

Ardreda Johnson
7352 Stonehaven Pl
Rch Cucamonga CA 91730

**Loan Number:  1000039145**
**Property Address:** 7352 Stonehaven Pl
Rancho Cucamonga CA 91730

Dear Ardreda Johnson,

**Your delinquent home loan is now managed by PennyMac.**
This letter serves as an official notification of the transfer of your loan to
PennyMac Loan Services, LLC (PennyMac), which is effective September 26, 2011.
The transfer of loans is common in the mortgage industry, and does not change
the terms of your loan.

**Start sending your payments to PennyMac.**
Our records show that payments on your home loan are now seriously past due.
Your next payment is due to PennyMac on February 01, 2011. See the reverse side
of this letter for ways to make your payment and other important information on
managing your loan.

**You may have options to avoid foreclosure.**
You may have received an official Notice of Intent to Foreclose, but you may still have a
short window of time to consider some options before foreclosure begins:

- **Repayment Plan or Forbearance Plan** allows you to repay your past-due
amounts over time.

- **Loan Modification** is your best option if you want to stay in your home, are
unable to make the current payment but could make reasonable payments
toward your loan.  PennyMac may be able to restructure your loan to make your
payments more affordable.

- **Short Sale** may be right if you owe more on your loan than your home is worth
and you are unable to make your payments.  With a short sale, PennyMac allows
you to sell your home for an approved amount that may be less than your
outstanding debt, and you may receive cash to help with relocation.

- **Deed-In-Lieu of Foreclosure** may be a good alternative to foreclosure if you are
unable to find a buyer.  You sign over the property deed to PennyMac and walk
away from all associated debts and fees.  You may receive cash to help with
relocation.

**Please call (866) 545-9070 to discuss your options.**
Since you are already several payments behind, the window of opportunity is short. We
cannot help if you do not call, so call (866) 545-9070 today.

Sincerely,

*PennyMac Loan Services, LLC*



**Your
Home Loan
Has Been
Transferred to
PennyMac**

You must take

**Call Toll Free
1-866-545-9070**

**Phone:**
Toll Free (866) 545-9070
Se Habla Espano

**Hours:**
Mon - Fri  7am -6pm (PST)
Sat  7am -11 am (PST)

**Email:**
Service@PennyMacUSA.com

**Website:**
www.PennyMacUSA.com

**Send Payments To:**
P.O. Box 30597
Los Angeles, CA 90030-0597

Equal Housing Lender  ©2011 PennyMac Loan Services, LLC, 27001 Agoura Road, Calabasas, CA 91301, (866) 545-9070  Trade/service marks are the property of PennyMac Loan Services, LLC and/or its subsidiaries.  Licensed by the Department of Corporations under the California Residential Mortgage Lending Act. Illinois Residential Mortgage Licensee #MB.8760595. Minnesota: This is not an offer to enter into an agreement. Any such offer may only be made pursuant to Minn. Stat. §47.206 (3) & (4). Washington Consumer Loan License #520-CL-48635. Some products may not be available in all states. Information, rates and pricing are subject to change. This is an attempt to collect a debt and any information obtained will be used for that purpose.  See enclosed important information.

WELCOM15400DL02

65



# Quick Start Guide to Managing Your PennyMac Loan

| Register Online | Make Your Payments to PennyMac |
|---|---|
| **Once your loan is brought current, you can manage your home loan online:**<br><br>• Go to the "My Account" tab on PennyMacUSA.com and click on "Register"<br><br>• Enter the requested information, then click "submit" to process your registration<br><br>• Once registered, you can check your account status at your convenience, day or night, seven days a week | **There are several ways to make your payment:**<br><br>• By going online at PennyMacUSA.com<br><br>• Using our automated phone service by calling **(866) 545-9070**<br><br>• Mailing a check payable to PennyMac to:<br>**P.O. Box 30597**<br>**Los Angeles, CA 90030-0597**<br><br>• Signing up for Automatic Electronic Payments |
| **Sign Up for Automatic Electronic Payments** | **Contact Your Insurance Carrier** |
| An automatic electronic payment, also known as an ACH debit, is an easy, efficient way to make your home loan payments through automatic deductions from your designated bank account.<br><br>The electronic payment instructions you provided to your former servicer will not transfer. To sign up for this service, fill out the short application in this package. | If you have funds escrowed for taxes and insurance, your escrow balances were transferred to us from your previous lender.<br><br>However, you must notify your insurance carrier that your loan has transferred to PennyMac and provide the following address for billing purposes:<br><br>**PennyMac Loan Services**<br>**P.O. Box 29247**<br>**Phoenix, AZ 85038**<br>**Fax: (866) 793-4723** |

**☎ Questions about the transition? Call us toll-free at (866) 545-9070**

We are required to provide the following information under federal law: This notification is a requirement of Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. 2605).

Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before the effective date of transfer. The new servicer must also send you a similar notice no later than 15 days after the effective date. You should also be aware of the following information, which is set out in more detail in Section 6 of RESPA (U.S.C. 2605): During the 60-day period following the effective date of the transfer of loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 U.S.C. 2605) gives you certain consumer rights whether or not your loan servicing is being transferred. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgement within 20 business days of the receipt of your request. A "qualified written request" is written correspondence other than notice on a coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reason for the request.

Not later than 60 business days after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During the 60 business day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section.

WELCOMEACQDLQ2



## State-Specific Collection Notices

The following states require that disclosures be given to residents of those states in certain circumstances. You may also have rights in those or other states not specifically mentioned below. Note that if you are delinquent on your payments, any information that you provide us or that we collect will be used for debt collection purposes.

**If you are a CALIFORNIA Resident:**
AS REQUIRED BY LAW, YOU ARE HEREBY NOTIFIED THAT A NEGATIVE CREDIT REPORT REFLECTING ON YOUR CREDIT RECORD MAY BE SUBMITTED TO A CREDIT REPORTING AGENCY IF YOU FAIL TO FULFILL THE TERMS OF YOUR CREDIT OBLIGATIONS. BUT, WE WILL NOT SUBMIT A NEGATIVE CREDIT REPORT TO A CREDIT REPORTING AGENCY ABOUT THIS OBLIGATION UNTIL THE EXPIRATION OF ANY TIME PERIOD DESCRIBED. THE STATE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT AND THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT REQUIRE THAT, EXCEPT UNDER UNUSUAL CIRCUMSTANCES, COLLECTORS MAY NOT CONTACT YOU BEFORE 8AM OR AFTER 9PM. THEY MAY NOT HARASS YOU BY USING THREATS OF VIOLENCE OR ARREST OR BY USING OBSCENE LANGUAGE. COLLECTORS MAY NOT USE FALSE OR MISLEADING STATEMENTS OR CALL YOU AT WORK IF THEY KNOW OR HAVE REASON TO KNOW THAT YOU MAY NOT RECEIVE PERSONAL CALLS AT WORK. FOR THE MOST PART, COLLECTORS MAY NOT TELL ANOTHER PERSON, OTHER THAN YOUR ATTORNEY OR SPOUSE, ABOUT YOUR DEBT. COLLECTORS MAY CONTACT ANOTHER PERSON TO CONFIRM YOUR LOCATION OR ENFORCE A JUDGEMENT. FOR MORE INFORMATION ABOUT DEBT COLLECTION ACTIVITIES, YOU MAY CONTACT THE FEDERAL TRADE COMMISSION AT 1-877-FTC-HELP or www.ftc.gov.

**If you are a COLORADO Resident:**
A CONSUMER HAS THE RIGHT TO REQUEST IN WRITING THAT A DEBT COLLECTOR OR COLLECTION AGENCY CEASE FURTHER COMMUNICATION WITH THE CONSUMER. A WRITTEN REQUEST TO CEASE COMMUNICATION WILL NOT PROHIBIT THE DEBT COLLECTOR OR COLLECTION AGENCY FROM TAKING ANY OTHER ACTION AUTHORIZED BY LAW TO COLLECT THE DEBT. FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA. PENNYMAC'S COLORADO OFFICE LOCATION: 717 SEVENTEENTH STREET, SUITE 2300, DENVER, COLORADO 80202, (866) 436-4766.

**If you are a MAINE Resident:**
PENNYMAC OPERATING HOURS ARE 7:00 A.M. UNTIL 6:00 P.M. PACIFIC TIME MONDAY THROUGH FRIDAY AND 7:00 AM UNTIL 11:00 AM PACIFIC TIME SATURDAY. YOU MAY CONTACT OUR OFFICE DURING BUSINESS HOURS BY CALLING (866) 545-9070.

**If you are a MINNESOTA Resident:**
THIS COLLECTION AGENCY IS LICENSED BY THE MINNESOTA DEPARTMENT OF COMMERCE.

**If you are a NEW YORK Resident:**
THIS COLLECTION AGENCY IS LICENSED BY THE CITY OF NEW YORK, LICENSE NUMBER 1294096. THIS COLLECTION AGENCY IS ALSO LICENSED BY THE CITY OF BUFFALO, LICENSE NUMBER 551910.

**If you are a UTAH Resident:**
AS REQUIRED BY LAW, YOU ARE HEREBY NOTIFIED THAT A NEGATIVE CREDIT REPORT REFLECTING ON YOUR CREDIT RECORD MAY BE SUBMITTED TO A CREDIT REPORTING AGENCY IF YOU FAIL TO FULFILL THE TERMS OF YOUR CREDIT OBLIGATIONS. BUT, WE WILL NOT SUBMIT A NEGATIVE CREDIT REPORT TO A CREDIT REPORTING AGENCY ABOUT THIS OBLIGATION UNTIL THE EXPIRATION OF ANY TIME PERIOD DESCRIBED.

## Notice to PennyMac Customers Currently in Foreclosure

1. If your home is currently in foreclosure and you wish to apply for the federal government's loan modification program (**HAMP**), you must contact us at least 7 days prior to foreclosure sale.
2. All HAMP applications received less than 1 month from a scheduled foreclosure date must contain all required documentation in order to be considered for a modification (HAMP), or a foreclosure alternative (HAFA) program. If you are not able to provide all required documentation, you must include a written explanation for all missing documentation.

## Licensing Information

Equal Housing Lender. © 2008-2011 PennyMac Loan Services, LLC, 27001 Agoura Road, Calabasas, CA 91301, 818-224-7442. Trade/service marks are the property of PennyMac Loan Services, LLC, and /or its subsidiaries. NMLS ID #35953.

Licensed by the Department of Corporations under the California Residential Mortgage Lending Act; Illinois Residential Mortgage Licensee #MB.6760595. Minnesota: This is not an offer to enter into an agreement. Any such offer may only be made pursuant to Minn. Stat. §47.206 (3) & (4); Washington Consumer Loan License #520-CL-48635. Some products may not be available in all states. Information, rates and pricing are subject to change without prior notice at the sole discretion of PennyMac Loan Services, LLC. All loan programs subject to borrowers meeting appropriate underwriting conditions. This is not a commitment to lend. Other restrictions apply. All rights reserved. For a complete listing of state licenses, please visit our website at http://www.pennymacusa.com/licenses.php.

WELCOMEACQDL02

0001024-0001296



# Privacy Notice
## Your Privacy is Important

1000039145

The main goal of PennyMac* is to help you maintain and protect the ownership in your home. This notice explains how we protect and use your personal information in a safe, secure and responsible manner. What you need to know in brief:

- We do not sell customer information to third parties.
- We offer you products or services at a lower cost or with greater convenience by sharing limited information within PennyMac and with carefully selected business partners.
- We do not share customer information with affiliates except to provide existing services to you.

### How We Obtain and Use Information

To service and manage your loan, comply with government regulations, improve our products and services, and better understand your financial situation and needs, we collect and maintain customer and former customer data. We collect information:

- you provide us on applications, other forms, or verbally over the phone (such as your Social Security, account and phone numbers, assets, income and employment history);
- about your transactions with us (such as your loan balance, payment history and other account information);
- about your credit history from a credit reporting agency and
- About you or your property from business partners and service providers (such as a property appraisal or purchase contracts).

We only disclose this data to third parties that assist us in providing vital services to you (such as credit reporting agencies, regulators, data processing providers, loan investors, and monthly statement vendors). These service providers are contractually bound to keep the information confidential and not use it for any other purpose.

### Your Options Under This Notice

You may limit how we share your personal information. This is called a right to "opt out". You have two options to consider:
1. Continue receiving product and services offers without taking any action
2. Opt out of information sharing. If you want to opt out, please call us toll-free at (866) 545-9070. Please have your account and billing information available when you call.

If you opt out we will continue to share non-public personal information with our service providers (such as monthly statement vendors), and with third parties as required or permitted by law (such as credit reporting agencies).

**Notice to CA Residents:** We will provide a separate short form notice describing the rights of California residents to opt out under California law, including rights to opt-out of affiliate sharing. We will only share non-public personal information as required or permitted by law.

**Notice to ND Residents:** We will only share information with our service providers and with third parties as required or permitted by law. We may also disclose your non-public personal information with your written consent.

**Notice to VT Residents:** We will not share non-public personal information with anyone except our service providers and third parties as required or permitted by law. We will share transaction and experience information (such as your loan balance and payment history) within the PennyMac family of companies.

### How We Protect Your Information

We strive to safeguard your data. We do this by:

- setting policies and procedures for carefully handling your information;
- limiting employee access to sensitive information;
- protecting against unauthorized access to customer data using data encryption, authentication, and virus detection technology;
- requiring service providers who do business with us to comply with privacy laws;
- auditing company security practices;
- conducting background checks on all employees and providing privacy guidelines after hiring.

* This privacy notice applies to PennyMac Loan Services, LLC; PennyMac Capital Management, LLC; PNMAC Mortgage Opportunity Fund Investors, LLC; Private National Mortgage Acceptance Company, LLC; and PNMAC Mortgage Co., LLC.

Questions about your privacy?

☎ Call us at (866) 545-9070 or
✎ Email us at Service@PennyMacUSA.com

**Effective Date:  September 5, 2008**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "F"

Recorded in Official Records, Cou..., of San Bernardino

**DENNIS DRAEGER**
ASSESSOR – RECORDER – CLERK

691  First American

6/08/2011
8:00 AM
BGJ

Doc#:  **2011 – 0230312**

| Titles: | 1 | Pages: | 3 |
|---|---|---|---|
| Fees | | | 33.00 |
| Taxes | | | 0.00 |
| Other | | | 0.00 |
| PAID | | | $33.00 |

Person requesting recording:
CitiMortgage Inc.
0801 Colwell Blvd
Irving, TX 75039

When recorded mail to:
CitiMortgage, Inc.
1000 Technology Drive, MS 321
O'Fallon, MO 63368-2240

APN: 0227-831-17-0-000

SPACE ABOVE THIS LINE FOR RECORDERS USE

**ASSIGNMENT OF DEED OF TRUST**

**KNOW ALL MEN BY THESE PRESENTS:**

That **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**, a Delaware corporation, whose mailing address is ,
P.O. Box 2026, Flint, MI 48501-2026, as nominee for FIRST NLC FINANCIAL SERVICES. LLC its successors and assigns,
herein designated as the Assignor, for and in consideration of the sum of TEN and 00/00 ($10.00) DOLLARS and other good and
valuable consideration, the receipt of which is hereby acknowledged, does hereby grant, bargain, sell, assign, transfer and set
over unto CITIMORTGAGE, INC., whose mailing address is 1000 Technology Drive, O'Fallon, MO 63368-2240, herein
designated as the Assignee, that certain mortgage Records SAN BERNARDINO County, California and encumbering the
property more particularly described as follows: executed by ARDREDA JOHNSON, AS A SINGLE WOMAN dated
11/07/2006 filed 11/20/2006 and recorded in Official Records INS-2006-0788066, of the Public

AS PER LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF BY REFERENCE

TO HAVE AND TO HOLD the same unto the said Assignee, its successors and assigns forever.       See Exhibit "A" Attached

*[Remainder of page left intentionally blank; signature page immediately follows]*

69

**IN WITNESS WHEREOF,** the said Assignor has caused these presents to be executed in its name on _May 23, 2011_

Dated: _5/23/11_

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
a Delaware corporation

By: _Hetal Patel_

_HETAL PATEL_ _____ Assistant Secretary

STATE OF TEXAS        )
                      )ss
COUNTY OF DALLAS      )

On _May 23, 2011_ before me, _Brandon Joseph Breshears_ the undersigned Notary Public, personally appeared _Hetal Patel_ Assistant secretary, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

MIN: 100195910003465096          MERS Phone: 1-888-679-6377

BRANDON JOSEPH BRESHEARS
My Commission Expires
March 15, 2015

70

# Exhibit "A"

## ATTACHMENT

All that certain real property in the County of SAN BERNARDINO, State of California, described as follows:

PARCEL 1:

LOT(S) 17 OF TRACT NO. 14407, IN THE CITY OF RANCHO CUCAMONGA, COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 248 PAGE(S) 14 THROUGH 19 INCLUSIVE, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN BERNARDINO COUNTY ON MAY 26, 1992;

EXCEPTING THEREFROM NON-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, MAINTENANCE, DRAINAGE, REPAIR, ENCROACHMENT, SUPPORT, AND FOR OTHER PURPOSES, ALL AS DESCRIBED IN THE DECLARATION OF RESTRICTIONS OF NORTHVIEW PLANNED DEVELOPMENT, RECORDED ON AUGUST 12, 1992, AS INSTRUMENT NO. 92-334969 IN THE OFFICIAL RECORDS OF SAID COUNTY AND ALL AMENDMENTS, MODIFICATIONS, OR SUPPLEMENTS THERETO (HEREINAFTER THE "DECLARATION").

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES, LYING BELOW A DEPTH OF 500 FEET, WITHOUT THE RIGHT OF SURFACE ENTRY, AS GRANTED TO WESTERN SUPPLY CORP. BY DEED RECORDED SEPTEMBER 17, 1979, IN BOOK 9772, PAGE 1262, OFFICIAL RECORDS.

EXCEPTING THEREFROM ALL MINERALS, OIL, GAS, PETROLEUM, OTHER HYDROCARBON SUBSTANCES AND ALL UNDERGROUND WATER IN OR UNDER OR WHICH MAY BE PRODUCED FROM SAID LAND WHICH UNDERLIES A PLANE PARALLEL TO AND 500 FEET FROM THE PRESENT SURFACE OF SAID LAND FOR THE PURPOSE OF PROSPECTING FOR, THE EXPLORATION, DEVELOPMENT, PRODUCTION, EXTRACTION AND TAKING OF SAID MINERALS, OIL, GAS, PETROLEUM, OTHER HYDROCARBON SUBSTANCES AND WATER FROM SAID LAND BY MEANS OF MINES, WELLS, DERRICKS, OTHER EQUIPMENT FROM SURFACE LOCATIONS ON ADJOINING OR NEIGHBORING LAND OR LYING OUTSIDE OF THE ABOVE DESCRIBED LAND, IT BEING UNDERSTOOD THAT THE OWNER OF SUCH MINERALS, OIL, GAS, PETROLEUM, OTHER HYDROCARBON SUBSTANCES AND WATER AS SET FORTH ABOVE, SHALL HAVE NO RIGHT TO ENTER UPON THE SAID LAND OR ANY PORTION THEREOF ABOVE SAID PLANE PARALLEL TO AND 500 FEET BELOW THE PRESENT SURFACE OF THE SAID LAND FOR ANY PURPOSE WHATSOEVER.

PARCEL NO. 2:

NON-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, ENCROACHMENT, DRAINAGE, REPAIR, MAINTENANCE, SUPPORT, AND FOR OTHER PURPOSES, ALL AS DESCRIBED IN THE DECLARATION.

PARCEL NO. 3:

NON-EXCLUSIVE EASEMENT ON AND OVER THE "COMMON AREA", AS DEFINED IN THE DECLARATION OR ACCESS, USE, OCCUPANCY, ENJOYMENT, INGRESS TO, AND EGRESS FROM THE AMENITIES LOCATED THEREON, SUBJECT TO THE TERMS AND PROVISIONS OF THE DECLARATION. THIS EASEMENT IS APPURTENANT TO PARCEL 1 ABOVE DESCRIBED. THE COMMON AREA IS FOR THE USE OWNERS OF LOTS WHICH ARE SUBJECT TO THE DECLARATION AND IS NOT FOR THE USE OF THE GENERAL PUBLIC.

APN No:  0227-831-17-0-000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "G"

Recorded in Official Records, County of San Bernardino

**DENNIS DRAEGER**
ASSESSOR – RECORDER – CLERK

691 First American

10/13/2011
8:00 AM
KB

Doc#: **2011–0427502**

| Titles: | 1 | Pages: | 2 |
|---|---|---|---|
| Fees | | | 18.00 |
| Taxes | | | 0.00 |
| Other | | | 0.00 |
| PAID | | | $18.00 |

· Recording requested by:
Quality Loan Service Corp.

When recorded mail to:
Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101

TS # CA-11-449651-AB
Order #: 5524581

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 11/7/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 to the Financial code and authorized to do business in this state, will be held by duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

**BENEFICIARY MAY ELECT TO BID LESS THAN THE TOTAL AMOUNT DUE.**

Trustor(s): **ARDREDA JOHNSON, AS A SINGLE WOMAN**
Recorded: **11/20/2006** as Instrument No. **2006-0788066** in book xxx, page xxx of Official Records in the office of the Recorder of **SAN BERNARDINO** County, California;

Date of Sale: **11/14/2011 at 12:00 PM**
Place of Sale: **At the North Arrowhead Avenue entrance to the County Courthouse, 351 North Arrowhead Avenue, San Bernardino, CA 92401**
Amount of unpaid balance and other charges: **$437,057.36**
The purported property address is: **7352 STONEHAVEN PL RANCHO CUCAMONGA, CA 91730**
Assessor's Parcel No. **0227-831-17-0-000**

The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the deposit paid.  The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee, or the Mortgagee's Attorney.

Date: 10/11/2011

**Quality Loan Service Corp.**
**2141 5th Avenue**
**San Diego, CA 92101**
**619-645-7711 For NON SALE information only**
**Sale Line: 714-730-2727 or Login to: www.lpsasap.com**
**Reinstatement Line: 619-645-7711 Ext. 3704**

Quality Loan Service Corp. by: Erica Paul, as Authorized Agent.

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holders right's against the real property only.

**THIS NOTICE IS SENT FOR THE PURPOSE OF COLLECTING A DEBT. THIS FIRM IS ATTEMPTING TO COLLECT A DEBT ON BEHALF OF THE HOLDER AND OWNER OF THE NOTE. ANY INFORMATION OBTAINED BY OR PROVIDED TO THIS FIRM OR THE CREDITOR WILL BE USED FOR THAT PURPOSE.**

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "H"

Recorded In Official Records, County of San Bernardino

2/15/2012
8:00 AM
FV



**DENNIS DRAEGER**
ASSESSOR – RECORDER – CLERK

691 First American

Doc#:  **2012−0060604**



| Titles:  1 | Pages:  1 |
|---|---|
| Fees | 18.00 |
| Taxes | 0.00 |
| Other | 0.00 |
| PAID | $18.00 |

Recording requested by:

When recorded mail to:

PennyMac Loan Services, LLC
6101 Condor Drive
Suite 200
Moorpark, CA 93021

Space above this line for recorders use

APN: **0227-831-17-0-000**
TS No.: **CA-11-449651-AB**
Order No.: **5524581**

## Assignment of Deed of Trust

For value received, the undersigned hereby grants, assigns, and transfers to

**PNMAC Mortgage Opportunity Fund Investors, LLC**

All beneficial interest and all rights accrued or to accrue under that certain Deed of Trust dated **11/7/2006** executed by **ARDREDA JOHNSON, AS A SINGLE WOMAN**, as Trustor(s) to **JEFFREY M HENSCHEL**, as Trustee and recorded as Instrument No. **2006-0788066**, on **11/20/2006**,  of Official Records    in the office of the County Recorder of **SAN BERNARDINO** County, **CA,** that secures the underlying promissory note.

Dated:    FEB 0 6 2012

CitiMortgage, Inc.

By: _____
Attorney-in-Fact
**Javier Huancas**

State of: ___Califomia___ )
County of: ___**Ventura**___ ) ss.

On ___FEB 0 6 2012___ before me, **Diana V Ramos** _____ a notary public, personally appeared _____**Javier Huancas**_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ___California___ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.          (Seal)

DIANA V. RAMOS
Commission # 1947285
Notary Public - California
Los Angeles County
My Comm. Expires Aug 7, 2015

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "I"

RECORDING REQUESTED BY:

Electronically Recorded in Official Records, County of San Bernardino    4/15/2014
03:44 PM
NP

**DENNIS DRAEGER**
ASSESSOR - RECORDER - CLERK
691 First American

**Doc #: 2014-0134085**  | Titles: 1 | Pages: 2

AND WHEN RECORDED MAIL TO:

| Fees | 21.00 |
| Taxes | .00 |
| Other | .00 |
| PAID | 21.00 |

Clear Recon Corp.
4375 Jutland Drive Suite 200
San Diego, California 92117

55-24581

TS No.: P1370585-CA   Loan No.: *********5

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## SUBSTITUTION OF TRUSTEE

    **WHEREAS, ARDREDA JOHNSON, AS A SINGLE WOMAN** was the original Trustor, **JEFFREY M. HENSCHEL** was the original Trustee, and **FIRST NLC FINANCIAL SERVICES, LLC** was the original Beneficiary under that certain Deed of Trust dated **11/7/2006** and recorded on **11/20/2006, as Instrument No. 2006-01788066,** of Official Records of **San Bernardino** County, California, and

    **WHEREAS,** the undersigned is the present Beneficiary under said Deed of Trust, and

    **WHEREAS,** the undersigned substitutes a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

    **NOW, THEREFORE,** the undersigned hereby substitutes **CLEAR RECON CORP.**, whose address is **4375 Jutland Drive Suite 200, San Diego, California 92117,** as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated: 7/23/13

**PNMAC Mortgage Opportunity Fund Investors, LLC. By:**
**PNMAC Capital Management, LLC its Managing Member By:**
**PennyMac Loan Services, LLC, its attorney-in-fact**

**Brett Gernon**
**Authorized Representative**

State of CALIFORNIA   } ss.
County of VENTURA   }

On 7/23/13   before me, FRANK MICHAEL HOFF (NOTARY PUBLIC)   personally appeared
BRETT GERNON   who proved to me
on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of said State that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

FRANK MICHAEL HOFF
Commission # 1922568
Notary Public - California
Los Angeles County
My Comm. Expires Jan 21, 2015

75

## GOVERNMENT CODE 27361.7

I certify under the penalty of perjury that the notary seal on the document to which this statement is attached reads as follows:

Name of Notary: _FRANK MICHAEL HOFF_

Date Commission Expires: _JAN 21, 2015_

Notary Commission Number: _1922568_

Manufacturer or Vendor Number: _NNA1_
(located on both sides of the notary seal border)

County and State of Commission: _LOS ANGELES, CA_

Date: _4/15/2014_

Signature _____

_D.P.S._
(Firm name, if applicable)

h:govcode.dot

76

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "J"

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

Clear Recon Corp.
4375 Jutland Drive Suite 200
San Diego, California 92117

APN: 0227-831-17-0-000
T.S. No.: P1370585-CA

Property Address: 7352 STONEHAVEN PLACE,
RANCHO CUCAMONGA, CALIFORNIA 91730 ,

Electronically Recorded in Official Records, County of San Bernardino

4/15/2014
03:44 PM
NP



**DENNIS DRAEGER**
ASSESSOR - RECORDER - CLERK
691  First American

Doc #:  **2014-0134086**

Titles:  1      Pages:  4



| Fees | 27.00 |
| Taxes | .00 |
| Other | .00 |
| PAID | 27.00 |

SPACE ABOVE THIS LINE FOR RECORDER'S USE

Title Order No.: 5524581

# NOTICE OF DEFAULT

**Pursuant to CA Civil Code 2923.3**

**NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED**

注：本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

**NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO**

**TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP**

**LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY**

## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$64,594.00** as of **4/11/2014**, and will increase until your account becomes current.  While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.

Page 1 of 3

CRC NOD 12312013

Trustee Sale No.: **P1370585-CA**  Title Order No.: **5524581**

However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

PNMAC Mortgage Opportunity Fund Investors, LLC. By: PNMAC Capital Management, LLC its Managing Member By: PennyMac Loan Services, LLC, its attorney-in-fact
C/O Clear Recon Corp.
4375 Jutland Drive Suite 200
San Diego, California 92117
Phone: 858-750-7600

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.  Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN:   CLEAR RECON CORP. is either the original trustee, the duly appointed substituted trustee or the designated agent of the holder of the beneficial interest under a deed of trust dated 11/7/2006, executed by  ARDREDA JOHNSON, AS A SINGLE WOMAN, as Trustor, to secure certain obligations in favor of  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., AS NOMINEE FOR FIRST NLC FINANCIAL SERVICES, LLC ITS SUCCESSORS AND/OR ASSIGNS,  as beneficiary, recorded 11/20/2006, as Instrument No. 2006-0788066, of Official Records in the Office of the Recorder of  San Bernardino County, California, encumbering the land as fully described on said Deed of Trust

Said obligations including a promissory note for the principal sum of $388,500.00.  That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

 Installment of Principal and Interest plus impounds and/or advances which became due on 3/1/2011 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.

CRC NOD 12312013

# Declaration of Mortgage Servicer Pursuant to
# Civil Code § 2923.55(c)

Borrower(s):      ARDREDA JOHNSON
Mortgage Servicer:  PennyMac Loan Services
Property Address:  7352 STONEHAVEN PL
                         RANCHO CUCAMONGA  CA  91730

T.S.No.:         P1370585-CA

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that:

1. ☐ The mortgage servicer has contacted the borrower pursuant to California Civil Code § 2923.55(b)(2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure".  Thirty (30) days, or more, have passed since the initial contact was made.

2. ☑ The mortgage servicer has exercised due diligence to contact the borrower pursuant to California Civil Code § 2923.55(f) "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure".  Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

3. ☐ No contact was required by the mortgage servicer because the individual(s) did not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5.

4. ☐ The requirements of Cal. Civil Code § 2923.55 do not apply because the loan is not secured by a first lien mortgage or first deed of trust that secures a loan, or that encumbers real property, described in Civil Code § 2924.15(a).

I certify that this declaration is accurate, complete and supported by competent and reliable evidence which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

Dated: _10/29/13_

By: _____

JANET PARK

**Default Specialist**

Page 1

80

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "K"

**RECORDING REQUESTED BY**
**FIRST AMERICAN TITLE COMPANY**

RECORDING REQUESTED BY
And When Recorded Mail To:

**CLEAR RECON CORP.**
**4375 Jutland Drive Suite 200**
**San Diego, California 92117**
**Phone: 858-750-7600**

Electronically Recorded in Official Records, County of San Bernardino

**DENNIS DRAEGER**
ASSESSOR - RECORDER - CLERK
691  First American

1/02/2015
12:28 PM
FV
SAN

Doc #: **2015-0000888**

| | |
|---|---|
| Titles: | 1 | Pages: | 2 |

| | |
|---|---|
| Fees | 28.00 |
| Taxes | .00 |
| Other | .00 |
| PAID | 28.00 |

APN: 0227-831-17-0-000
T.S. No. **P1370585-CA**

Space Above This Line For Recorder's Use

5524581

# NOTICE OF TRUSTEE'S SALE

**Pursuant to CA Civil Code 2923.3**

**NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED**

注：本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO

TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP

LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

## IMPORTANT NOTICE TO PROPERTY OWNER:

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED **11/7/2006**. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER

On **1/27/2015** at **1:30 PM**, **CLEAR RECON CORP.**, as duly appointed trustee under and pursuant to Deed of Trust recorded 11/20/2006, as Instrument No. 2006-0788066, of Official Records in the office of the County Recorder of **San Bernardino** County, State of **CALIFORNIA** executed by:

**ARDREDA JOHNSON, AS A SINGLE WOMAN**

WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK DRAWN ON A STATE OR NATIONAL BANK, A CHECK DRAWN BY A STATE OR FEDERAL CREDIT UNION, OR A CHECK DRAWN BY A STATE OR FEDERAL SAVINGS AND LOAN ASSOCIATION, SAVINGS ASSOCIATION, OR SAVINGS BANK SPECIFIED IN SECTION 5102 OF THE FINANCIAL CODE AND AUTHORIZED TO DO BUSINESS IN THIS STATE:

**NEAR THE FRONT STEPS LEADING UP TO THE CITY OF CHINO CIVIC CENTER, 13220 CENTRAL AVE., CHINO, CA 91710**

all right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County and State described as:

**AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST**

The street address and other common designation, if any, of the real property described above is purported to be:
**7352 STONEHAVEN PLACE**
**RANCHO CUCAMONGA, CALIFORNIA 91730**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

CRC NOS 012914

T.S. No. **P1370585-CA**

## NOTICE OF TRUSTEE'S SALE

Said sale will be held, but without covenant or warranty, express or implied, regarding title, possession, condition, or encumbrances, including fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to pay the remaining principal sums of the note(s) secured by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is:
**$483,743.85**

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call **(844) 477-7869** or visit this Internet Web site **WWW.STOXPOSTING.COM**, using the file number assigned to this case **P1370585-CA**. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

FOR SALES INFORMATION: **(844) 477-7869**

Date Executed: _12/29/14_

CLEAR RECON CORP.

_____,Authorized Signature

CHRISTINE HOY
**CLEAR RECON CORP.**
**4375 Jutland Drive Suite 200**
**San Diego, California 92117**

CRC NOS 012914